THE PEOPLE *ex rel.* North American Restaurant, etc.

*v.*

ARTHUR H. CHETLAIN.

*Opinion filed December 20, 1905—Rehearing denied Feb. 8, 1906.*

1. CONSTITUTIONAL LAW—*the Shorthand Court Reporter act of 1887 is not unconstitutional.* The act of 1887, (Laws of 1887, p. 159,) authorizing circuit judges to appoint shorthand reporters for the court, is not in violation of sections 9, 10 and 13 of article 10 of the constitution. (*People* v. *Raymond,* 186 Ill. 407, followed.)

2. SAME—*sections 10 and 13 of article 10 of constitution do not refer to offices created by legislature.* Sections 10 and 13 of article 10 of the constitution, relating to the right of the county board to fix the compensation for county officers, and requiring all persons elected or appointed to office who are paid, in whole or in part, by fees, to make sworn semi-annual reports to some officer designated by law, do not refer to an office created by the legislature.

3. SAME—*a per diem allowance is not "fees."* A *per diem* allowance to an officer cannot be regarded as "fees," within the meaning of that term as used in the constitution, concerning officers paid wholly or in part by fees, but must be regarded as compensation.

4. BILLS OF EXCEPTION—*party is not compelled to use notes of official court reporter.* The act of 1887 does not compel a party preparing a bill of exceptions to use the official court reporter's notes, and he may submit a bill of exceptions containing evidence taken by any competent reporter; but if the parties do not agree as to the correctness of the bill of exceptions, the trial judge, as an aid to his recollection, may order a transcript of the official court reporter's notes and tax the charge therefor as costs.

5. SAME—*trial judge cannot refuse to sign a bill of exceptions merely because official court reporter's notes have not been used.* Refusal of a trial judge to sign and seal a bill of exceptions upon the sole ground that the transcript of evidence therein contained was not prepared by the official court reporter is improper, and if no other objection to the bill of exceptions exists it is the duty of the judge to sign and seal the same, and he may be compelled, by *mandamus,* to do so.

6. SAME—*power of court to order transcript of court reporter's notes is not arbitrary.* The act of 1887, concerning shorthand reporters, does not invest the trial judge with power to arbitrarily

order a transcript of the court reporter's notes before he has ex-
amined the bill of exceptions presented to ascertain its correctness
or before any disagreement of the parties as to its correctness has
been called to his attention.

ORIGINAL petition for *mandamus.*

This is an original petition for *mandamus,* filed in this
court by the People on the relation of the North American
Restaurant and Oyster House against Arthur H. Chetlain,
one of the judges of the superior court of Cook county, com-
manding him to sign and seal a bill of exceptions, and permit
the same to be filed of record.

The petition alleges that the relator, a corporation organ-
ized under the laws of Illinois, was sued at law on or about
May 28, 1903, in a certain suit in said superior court, where-
in John McElligott, administrator of the estate of Richard
D. McElligott, deceased, was plaintiff, which suit was insti-
tuted to recover damages for the alleged wrongful causing
of the death of Richard D. McElligott; that the same came
to trial on April 28, 1905, before the Hon. Arthur H. Chet-
lain, judge as aforesaid, and that the trial was completed on
or about May 4, 1905, resulting in a verdict of guilty against
the relator, petitioner herein, for the sum of $5000.00; that
on May 20, 1905, the petitioner's motion for a new trial was
overruled, and final judgment entered against it for said sum
and costs; that exceptions were taken to the overruling of
said motion for new trial and entry of said judgment, and
an appeal therefrom was duly prayed and allowed to the
October term of the Appellate Court, an appeal bond in the
sum of $6000.00 to be filed in thirty days, and a bill of excep-
tions within sixty days from May 20, 1905; that the bond
was duly filed; that a true, correct, complete and accurate
bill of exceptions was prepared on behalf of petitioner and
submitted to said judge on July 5, 1905, at which time he
was requested to sign and seal said bill of exceptions, but

declined and refused to sign and seal the same, and informed petitioner that he did not then feel disposed to sign said bill of exceptions, for the reason that the transcript of evidence therein contained was not prepared by his official court reporter, one James E. Ford, but would consider the matter further and hear arguments of counsel on the question, whether a presiding judge is required to sign a correct and proper bill of exceptions, where said presiding judge has appointed an official court reporter, and the transcript of evidence, contained in such bill of exceptions, is not prepared by the official court reporter; that, on July 5, 1905, the time for filing said bill was extended to August 5, 1905, and that within that time, to-wit, on July 29, 1905, petitioner presented to said judge, and in his court room, its proposed bill of exceptions, which was a correct, accurate and complete one, and requested said judge to sign and seal the same; and thereupon, after hearing argument, he declined and refused to sign and seal said bill of exceptions, and informed petitioner that he would not sign and seal said bill of exceptions, or any other bill of exceptions proposed by petitioner, unless it contained a transcript of evidence made and prepared by said official court reporter; that a true copy of said bill, so submitted to said judge, is annexed to the petition.

The petition then sets forth an agreed statement of facts, signed by the respondent, Judge Chetlain, and by the petitioner, which said agreed statement of facts is substantially as follows: *First,* that said Chetlain, one of the judges of said court, as such judge on March 13, 1905, appointed one James E. Ford, a competent court reporter, as the official court reporter for and of the court presided over by said judge, of which appointment counsel for petitioner had due notice, and that the same was in accordance with the terms of the statute in such case made and provided; *second,* that said Ford, from the time of his appointment and during all subsequent times in the petition referred to, was acting as such official court reporter of said court, and performed his

duties in accordance with the provisions of the statute, and was at all times a competent and skillful court reporter; *third,* that the petitioner did not request of the court, or of the official court reporter, that a transcript of the evidence and proceedings should be made for the petitioner, and that no transcript of the evidence and proceedings of said trial was ordered from, or caused to be written up by, the said official court reporter; *fourth,* that the transcript of evidence and proceedings of the trial were prepared by competent, skilled and experienced court reporters, other than the said official court reporter, under the orders and at the request of petitioner, by and through its counsel; that said bill of exceptions was objected to by counsel for plaintiff, on the ground that the transcript of evidence therein contained was not made up by the official stenographer, Ford, and the attorney for the plaintiff declined to accept any other; *fifth,* that the trial judge did not, either before or during said trial, order the petitioner to patronize the said official court reporter in the matter of procuring a transcript of the evidence and proceedings, and neither the trial court nor said official court reporter, before, at, or during the trial, asked or requested the petitioner or its representatives to patronize the official court reporter; *sixth,* the petitioner was not told, before the conclusion of the trial by the court or the official court reporter, that the trial court would decline or refuse to sign a bill of exceptions, unless the transcript of evidence and proceedings of the trial in such bill of exceptions contained was prepared by the official court reporter; *seventh,* that the proposed bill of exceptions, presented to the trial judge by the petitioner, was not examined by the trial judge, nor was it found by him to be inaccurate or incomplete, but the sole reason for his declining to sign and seal the same was, and is, that the transcript of evidence and proceedings of the trial therein contained was not made by the said official court reporter; *eighth,* that petitioner has paid approximately $175.00 for the transcript of evidence and pro-

ceedings had at the trial, which is incorporated in and made a part of the proposed bill of exceptions, and that it would cost the petitioner in the vicinity of $140.00 more to obtain from the official court reporter a transcript of said evidence and proceedings; which said agreed statement of facts is signed by Arthur H. Chetlain, judge, and by the People on the relation of said relator, by their attorney.

The petitioner alleges that it has a meritorious case, and that, without a bill of exceptions, all benefits of an appeal will be lost; that, although on July 29, 1905, it presented its bill of exceptions above mentioned in accordance with the terms of due notice given, and then and there moved and requested the court to sign and seal said bill of exceptions and permit it to be filed as such, yet the said judge then and there refused and still refuses to receive said bill of exceptions or to examine, sign or seal it as such, or to point out wherein, if at all, it is incorrect, inaccurate or insufficient, etc.

The answer of Arthur H. Chetlain admits that said bill of exceptions was presented to him by the petitioner, and that he was requested to sign the same; that the trial of said cause occupied four days, beginning on April 28, 1905, and ending on May 3, 1905; that, between the last date and the presentation of the said bill of exceptions, a period of nine weeks elapsed during which the respondent was engaged in the trial of causes; that respondent was holding court six or seven hours a day six days of the week; that, by reason of the volume of business thus transacted, respondent, before April 28, 1905, found that it was impracticable for him to retain and carry in his mind, by any system of personal notes he might take of the testimony in causes tried before him, sufficient recollection of the testimony to enable him to intelligently and expeditiously settle bills of exceptions, or to pass upon or determine the correctness or accuracy of proposed bills of exceptions, without recourse to some other legal method in the premises; that accordingly, on March 13, 1905, he appointed said Ford official reporter in accord-

ance with the terms of the statute, of which appointment
the petitioner before said trial was advised; that Ford per-
formed his duties, as such reporter, in accordance with the
provisions of the statute, and was a competent and skillful
court reporter in whom respondent reposed the utmost con-
fidence; that after his appointment, respondent, in reliance
upon his faithful discharge of his duties, virtually abandoned
and ceased the making of personal notes on the evidence
offered or received and proceedings had in causes tried be-
fore him; that he made no personal notes of the evidence
and proceedings in said case above named, and could not on
May 15, 1905, or at any time since said date, and cannot
now, correct or revise or determine the correctness or incor-
rectness, or point out the incorrectness or omissions in said
draft or certificate of evidence, save by recourse to some aid
to respondent's recollection agreeable to law; that he can
not settle the bill of exceptions in said last mentioned cause,
save by the aid of notes and transcript of notes of the same,
taken by the said Ford, as such court reporter, although he
admits and states the fact to be that all original exhibits in
said bill contained and all witnesses were accessible to re-
spondent; that "by reason of the premises, respondent never
examined said draft or certificate of evidence, nor deter-
mined or arrived at any belief or opinion as to its accuracy,
correctness, sufficiency or completeness."

The answer further admits that respondent signed said
agreed statement of facts; that respondent on July 5 and
July 29, 1905, "advised petitioner that respondent would not
undertake to pass upon or determine the correctness or in-
correctness of said draft of a bill of exceptions, except with
the assistance of a transcript of the notes of said official
court reporter of the evidence upon said trial of said last
mentioned cause, and that, by virtue of the statute, respond-
ent would require petitioner to pay, in the first instance, for
such transcript of said official notes; that no formal order
was entered by respondent as such judge, either directing

such official court reporter to prepare such transcript of his said notes, or requiring the petitioner to secure such transcript, or formally ordering and directing that the costs of such transcript should be paid in the first instance by the petitioner; but that no objection was made at any time by the petitioner to the omission to enter any such formal order or orders," etc.; that petitioner refused in any event to pay in the first instance for such transcript of such official notes; that, "had the transcript of evidence in said draft of a bill of exceptions contained been a transcript of said official court reporter's notes of the evidence and proceedings in question, respondent would have examined said draft and have proceeded in accordance with law, to settle therefrom a bill of exceptions in said cause."

The answer further states that respondent "is and has been at all times ready and willing to settle, sign and seal a true, correct, complete and accurate bill of exceptions in said cause, and to that end to examine said proposed draft of a bill of exceptions, and determine its accuracy and sufficiency, and point out its inaccuracies, omissions and insufficiencies, if any, on the sole condition that the petitioner * * * pay in the first instance for a transcript of said notes of said official reporter of the testimony and evidence in said cause, in accordance with the requirement thereof, as aforesaid, by respondent, under and by virtue of the statute in such case made and provided, to be used by respondent in examining and determining the correctness of said draft of a bill of exceptions, and settling a true, complete and accurate bill of exceptions in said cause."

O. W. Dynes, for relator:

*Mandamus* will lie to compel a judge to sign a bill of exceptions when a correct one is presented in apt time, in cases where the right of appeal exists. *People* v. *Pearson,* 2 Scam. 189; 3 id. 270; *People* v. *Jameson,* 40 Ill. 93; *Hulett* v.

*Ames,* 74 id. 253; *People* v. *Williams,* 91 id. 87; *People* v. *Pendergast,* 117 id. 588; *People* v. *Anthony,* 129 id. 218; *Hawes* v. *People,* 129 id. 123; *People* v. *Chytraus,* 183 id. 192; *People* v. *Holdom,* 193 id. 319.

When, according to the undisputed facts, a correct, complete and accurate bill of exceptions is presented to the judge, he is without discretionary power, and being without discretion is obliged to act and sign the bill of exceptions. *Graham* v. *People,* 111 Ill. 253.

The trial court cannot refuse a bill of exceptions because it was not prepared by the official reporter or verified by any such person or official. *People* v. *Holdom,* 192 Ill. 319.

The law of 1887 is unconstitutional in that it prevents the county board from regulating the salary of the county employee called the official court reporter. Const. of 1870, art. 10, secs. 7, 9, 10.

The law of 1887 is unconstitutional because it omits to provide that the official court reporter shall make a semi-annual report to a designated officer of all his fees and emoluments, as by the constitution required. "Every person who is elected or appointed to any office in this State, who shall be paid, in whole or in part, by fees, shall be required by law to make a semi-annual report, under oath, to some officer to be designated by law, of all his fees and emoluments." Const. of 1870, art. 10, sec. 13.

LLOYD C. WHITMAN, (HENRY HORNER, Jr., of counsel,) for respondent:

Respondent may, under the act of 1887, lawfully require petitioner, in the first instance, to pay for a transcript of the official reporter's notes as a prerequisite to an examination by respondent of the proposed bill.

The trial judge is not obliged to settle and sign a proposed bill of exceptions because no objection is made to its contents by the adverse party. He must examine the bill

and exercise an independent judgment as to whether a proposed bill of exceptions contains a truthful account of the events of the trial. 3 Ency. of Pl. & Pr. p. 447; *Duer* v. *Davison,* 52 Ill. 110; *People* v. *Williams,* 91 id. 87; *People* v. *Holdom,* 193 id. 319.

It follows that if the court is unable, from his independent recollection, to determine the accuracy and correctness of a proposed bill of exceptions, he may, without waiting objection or controversy by counsel, resort to all available means to determine the facts. Where there is an official court reporter the transcript of the notes of such reporter is such available means to which the court may, by the express terms of the statute, of his own motion resort. Hurd's Stat. chap. 37, sec. 82*b; Central School Supply House* v. *Hirschy,* 106 Ill. App. 258; *Gillies* v. *Kent,* 106 Mich. 687.

The transcript of notes of a non-official court reporter is not such available means. *Grand Lodge* v. *Ohnstein,* 110 Ill. App. 312; *Dougherty* v. *People,* 118 Ill. 160; *Hubbard* v. *People,* 197 id. 15.

If the trial judge is not satisfied that a proposed bill of exceptions is true and correct, he will not be required, by *mandamus,* to sign the same. *People* v. *Williams,* 91 Ill. 87; *People* v. *Gary,* 105 id. 264; *People* v. *Jones,* 103 Ill. App. 189; *People* v. *Holdom,* 193 Ill. 319.

The law of 1887 does not contravene sections 9 and 10, or section 13, article 10, of the Illinois constitution.

Neither section 10 nor section 13 refers to an office created by the legislature. *People* v. *Harper,* 91 Ill. 357; *People* v. *Loeffler,* 175 id. 585; *People* v. *Bollam,* 182 id. 528.

The official court reporter is not a deputy or assistant of the clerk of the court, within the meaning of section 9 of article 10. *People* v. *Raymond,* 186 Ill. 415; *Hubbard* v. *People,* 197 id. 15; *Central School Supply House* v. *Hirschy,* 106 Ill. App. 258.

Nor is the official court reporter himself a county officer. The authority to fix his compensation is covered by section

32 of article 6 of the constitution. *Wulf* v. *Aldrich,* 124 Ill. 591.

The per diem allowance is not a fee, but merely compensation. *Knox County* v. *Christianer,* 68 Ill. 453; *Board of Supervisors* v. *Johnson,* 64 id. 149.

Mr. Justice Magruder delivered the opinion of the court:

*First*—It is insisted by the relator that the act of 1887, providing for the appointment of official court reporters, is unconstitutional. The question as to the constitutionality of the act is hardly an open one, as it was held to be constitutional in certain respects in the case of *People* v. *Raymond,* 186 Ill. 407.

The act is said to be in contravention of sections 9, 10, and 13 of article 10 of the constitution of 1870, upon the alleged ground that it is an attempt by the legislature to authorize the judges to determine the compensation of the official court reporter, and thereby to take from the county board the privilege and constitutional prerogative of determining and fixing the amount of compensation to be received by such reporter for his services. This precise point was passed upon by this court in *People* v. *Raymond, supra,* where, in referring to this feature of the act of 1887, we said: "The legislature has the power to appropriate the funds of a county, or to authorize the judges of the circuit courts to appoint shorthand reporters, and make their compensation a charge upon Cook county, without the action of the board of commissioners."

It is further said, that the act does not comply with section 13 of article 10 of the constitution, which provides that "every person who is elected or appointed to any office in this State, who shall be paid in whole or in part by fees, shall be required by law to make a semi-annual report, under oath, to some officer to be designated by law, of all his fees and

219—17

emoluments." Neither section 10, nor section 13, of article 10 of the constitution refers to an office created by the legislature. (*Jimison* v. *Adams County,* 130 Ill. 558; *People* v. *Harper,* 91 id. 357; *People* v. *Loeffler,* 175 id. 585; *People* v. *Bollam,* 182 id. 528). In *People* v. *Loeffler, supra,* we said (p. 604) : "When an office is created by a statute, it is wholly within the control of the legislature creating it. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished, and the compensation taken away from the incumbent, unless forbidden by the constitution." The compensation, which the county is authorized by the act of 1887 to pay to the official court reporter, is a *per diem,* not exceeding $5.00 per day. Such *per diem* allowance cannot be regarded as "fees" in the sense, in which that term is used in the constitution, but must be regarded as compensation. (*Knox County* v. *Christianer,* 68 Ill. 453; *Board of Supervisors* v. *Johnson,* 64 id. 149).

*Second*—The other questions involved in the case depend upon the construction to be given to the act of 1887, as applied to the facts in the case at bar. The petitioner herein presented to the respondent, as judge of the Superior court, after the case referred to in the statement preceding this opinion was tried, a bill of exceptions to be signed and sealed, containing a transcript of the evidence, introduced upon the trial, which had been taken by a shorthand reporter, who was not the official reporter of the court. It is not claimed by the respondent in his answer that the bill of exceptions, presented to him, was in any respect incorrect or inaccurate. The sole ground, upon which he refused to sign and seal the same, was that the transcript of the evidence, embodied in it, had not been prepared by his official court reporter. The answer shows that the respondent did not examine the bill of exceptions, submitted to him for his signature and seal. The seventh paragraph of the agreed statement of facts is, "that the proposed bill of exceptions,

presented to the trial judge by the petitioner herein, was not examined by the trial judge, nor was it found or believed by him to be inaccurate, incorrect or incomplete, but that the sole reason for his declining to sign and seal the same was, and is, that the transcript of evidence and proceedings of the trial therein contained were not made by said official court reporter." We do not think that the answer of the respondent, as set forth in the statement preceding this opinion, presents any sufficient reason or valid excuse for refusing to sign the bill of exceptions presented to him.

The petitioner in the case, which was tried, had paid approximately $175.00 for the transcript of evidence, embodied in the bill of exceptions, which it presented to respondent, and it would have cost it an additional sum of $140.00 to obtain from the official court reporter another transcript of said evidence. Respondent states in his answer that he declined to pass upon or determine the correctness or incorrectness of the draft of the bill of exceptions, presented to him, unless he had the assistance of a transcript of the notes of said official reporter of such evidence. Respondent also says in his answer that he told the petitioner that he would require it to pay in the first instance for a transcript of the notes of the official court reporter.

The act of 1887 does not make it obligatory upon the party, preparing a bill of exceptions, to use the notes of the official court reporter only, but he may prepare and submit a bill of exceptions, containing evidence taken by any competent and reliable reporter, whom he chooses to employ.

Section 2 of the act of 1887 provides as follows: "The said reporter shall cause full phonographic notes of the evidence in all trials in the court, for which he is so appointed, to be taken down, and one transcript of the same, if desired by either party to the suit, or by their attorney, or by the judge of the court, to be forthwith correctly made and furnished to the party so desiring it." If either party desires a copy of the official court reporter's notes, he may order the

same; but the inference is clear that, if he does not desire such copy, he need not order the same. The official court reporter is entitled to his *per diem* compensation, and to be paid the same by the county treasurer, independently and outside of the cost of writing up his notes, after they have been taken. Section 2, in the first proviso thereto, provides that, "when the judge trying the cause, shall, of his own motion, order a transcript of said shorthand notes as hereinbefore provided, he may direct the payment of the charges therefor, and the taxation of the same as costs, in such manner as to him may seem just." The words, "as hereinbefore provided," refer back to the first part of the section, which states that the reporter shall cause his notes to be taken down, and one transcript of the same, if desired "by the judge of the court to be forthwith correctly made and furnished." That is to say, if the judge desires a copy of the official reporter's notes as an aid to his recollection, he may direct the payment of the charges therefor, or the taxation of the same as costs, in such manner as to him may seem just. In the present case, it appears affirmatively that the petitioner did not order a copy of the official court reporter's notes to be written up. It also appears affirmatively that the respondent did not order a transcript of such notes to be written up, and presented to him. He did not direct the official court reporter to write up his notes, and furnish him a copy to be paid for, as he should direct, and to be taxed as costs. He simply told the petitioner, who presented to him a bill of exceptions, that he would not examine the same, or pass upon its correctness, unless the petitioner would procure a copy of the official shorthand reporter's notes, and submit that copy to him to be used in connection with his examination of the bill of exceptions submitted to him. In our opinion this was not the correct course to be pursued.

It is the duty of the trial judge to examine the bill of exceptions, which is submitted to him, and to determine whether it is correct and accurate. In *People* v. *Pearson,*

2 Scam. 189, we said (p. 205) : "The person, who offers a bill of exceptions, ought to present such an one as the judge can sign. The course to be pursued is either to endeavor to draw up a bill, by agreement, which the judge can sign, or to prepare a bill to which there will be no objections, and present it to the judge. * * * The judge must determine its accuracy, and whether it correctly recites the points made, and opinions excepted to; that he must sign such an one as he believes to be correct, and none other; that he cannot refuse to sign a bill altogether, but must sign one if required, in a case where there have been exceptions taken, provided it is applied for at the proper time. * * * The law makes him, and properly so, the judge of the propriety and accuracy of the act he is called on to solemnly verify the truth of, so that it shall become a part of the record in the cause; and it is not for other parties to determine the truth." The trial judge cannot substitute the notes of the official court reporter for his own judgment, or his own recollection, as to what occurred upon the trial. He can only order a transcript of such notes, when such transcript becomes necessary in order to enable him to determine whether or not the bill of exceptions, submitted to him, is correct and accurate, after it has been so submitted.

In *People ex rel.* v. *Williams*, 91 Ill. 87, we said (p. 91) : "It is set up in the petition, and not denied in the answer, that a full phonographic report of all the evidence offered on the trial was made at the time by skilled reporters. If this be true, we cannot see how there can be much room for controversy in regard to the evidence. But if this was not the case, the judge, who tried the cause, with the aid of counsel on each side of the case, ought to be able, without unnecessary trouble, to determine what evidence was given on the trial, and incorporate the same in the certificate of evidence. If the judge cannot remember the evidence, he might send for the witnesses who testified before him and examine them again, and in this or some other mode deter-

mine the facts to be incorporated in the certificate." The signing and sealing of a bill of exceptions is not merely a ministerial, but it is a judicial act. "The determination of what it shall contain is necessarily judicial in its character. (*Hake* v. *Strubel,* 121 Ill. 321). The judge must determine judicially, in the first instance, what the bill of exceptions shall contain, that it may truly and fairly present the facts and rulings occurring on the trial of the cause; and may, in the first instance, resort to all available means to determine the facts, and to secure accuracy in making up the record." (*People* v. *Williams,* 91 Ill. 87; *People* v. *Gary,* 105 id. 264). Inasmuch, therefore, as the determination of the correctness and accuracy of the bill of exceptions is a judicial act, such judicial function could not, under the constitution, be delegated to an official court reporter. The judge cannot accept the notes of such reporter, as determining what evidence was introduced and what rulings were made, independently of his own recollection and judgment. It is the duty of the court to use such notes, merely as an aid to his recollection, and not as a substitute for it. (*People* v. *Anthony,* 129 Ill. 218; *People* v. *Chytraus,* 183 id. 190; *People* v. *Holdom,* 193 id. 319).

The fourth paragraph in the agreed statement of facts states that "the transcript of evidence and proceedings of the trial hereinbefore mentioned were prepared by competent, skilled and experienced court reporters, other than the said official court reporter, under the orders, and at the request of the petitioner, by and through its counsel. And said bill of exceptions was objected to by counsel for the plaintiff on the ground that the transcript of evidence therein contained was not made up by the official stenographer, James E. Ford; and the attorney for the plaintiff declined to accept any other." It thus appears that the bill of exceptions, prepared by the petitioner, was submitted to the counsel on the other side, and no objection was made to its accuracy or correctness, but merely that the transcript of the evidence

therein contained had not been made up by the official court reporter. If the opposing counsel made no other objection to the bill of exceptions than the fact that the transcript of evidence therein was not made up by the official court reporter, then the respondent would have been justified in accepting the bill of exceptions presented to him as correct, and in signing and sealing the same. It has been said, in reference to the draft of a bill of exceptions, that "the draft so prepared, or a copy thereof, should be submitted, within the time required by law, to the adverse party for his examination and suggestion of amendments." (2 Ency. of Pl. & Pr. pp. 442, 443). It has also been said that "where the parties do not agree, the trial judge must decide as to the proper contents of the bill and proceed to settle and sign it accordingly. * * * In the settlement of a bill of exceptions, the trial judge exercises a wide discretionary power. He may refer to the reporter's notes of the evidence, or to his own minutes, and may recall and examine the witnesses as to their testimony on the trial." (3 Ency. of Pl. & Pr. pp. 448, 449). It has always been the practice in this State for the party who has prepared his bill of exceptions to submit it to the counsel upon the other side for examination. In *Weatherford* v. *Wilson,* 2 Scam. 253, we said (p. 256) : "It was no doubt the duty of the judge below to have signed a bill of exceptions containing the testimony; and if the judge, as stated by him, had not preserved minutes of the testimony, he should have permitted the party to have made out a statement of the evidence, and required it to be submitted to the opposite party for correction; and if the parties could not agree what the evidence was, the judge should then have corrected the bill with the best lights he possessed."

So, in the case at bar, one of the objects of the act of 1887, in empowering the judge to cause a copy of the official reporter's notes to be prepared for him, is to enable him to settle questions in regard to the accuracy and correctness of the bill of exceptions submitted to him, which the counsel in

the case disagree about. He is not invested with the arbitrary power of ordering such a transcript of the evidence to be made by the official reporter, simply because he desires to use such transcript in his examination of the bill of exceptions, submitted to him, before he has examined the latter to see whether it is correct or not, and before any disagreement of counsel as to its correctness has been called to his attention. Such transcript of the official reporter's notes is to be used as an aid to the recollection of the judge, and in the determination of disputed points. In the present case, the respondent refused to sign the bill of exceptions, presented to him, upon the ground that the transcript of the evidence, taken by the official reporter, had not been made by the latter, and without any examination at all on his part of the bill of exceptions prepared by petitioner, and without any knowledge on his part that such bill of exceptions was inaccurate or incorrect, and without any complaint on the part of the opposing counsel that the same was incorrect or inaccurate.

"A return to the alternative writ, which alleges that the relator had no authority to compel the respondent to sign the bill, since he himself must be the judge of the correctness of the exceptions, is insufficient, if it fails to show that the bill, as presented, did not state the facts truly, or that the exceptions were not taken in the proper manner and at the proper time. But the writ may direct the judge to sign the bill, as tendered, if it fairly presents the facts." (High on Ex. Legal Rem.—2d ed.—p. 180.) The return of respondent in the case at bar fails to show that the bill of exceptions, presented to him, did not state the facts truly. The language, used in the case of *People* v. *Holdom,* 193 Ill. 319, is precisely applicable here, to-wit: "We do not desire to be understood as requiring respondent to approve the particular bill of exceptions presented to him in the exact condition as presented, but it was and is his duty to examine it, and to point out where the inaccuracies are, and what corrections

should be made; and when the bill in his judgment, truly sets forth the proceedings and the evidence, it is his duty to sign and seal the same."

Peremptory writ of *mandamus* is granted.

*Writ awarded.*