954

Lavern W. Kron et al., Plaintiffs-Appellants, v. Edmund J. Kucharski, County Treasurer, et al., Defendants-Appellees.

(No. 59171;

First District (2nd Division)—August 26, 1975.

Lorraine Woods, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Henry A. Hauser, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

Plaintiffs brought this action as taxpayers of Illinois and Cook County on their own behalf and on behalf of all other taxpayers similarly situated. They sought declaratory and equitable relief, including restitution and an accounting,[1] from certain actions taken by the Cook County

---

[1] In oral argument, appellate counsel for plaintiffs frankly conceded that the only relief plaintiffs were seriously seeking was declaratory relief.

Board of Commissioners (hereinafter the County Board) in the summer of 1969. At that time, additional revenue of approximately 23 million dollars became available to Cook County from the State by action of the Illinois General Assembly. These funds first became available after the regular annual appropriation bill for fiscal year 1969 had been adopted in December of 1968. On 21 August 1969, pursuant to Public Act 76—412,[2] amending "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1969, ch. 34, par. 958), the County Board enacted a Supplemental Appropriation Bill and a Revised Position and Classification Plan. These measures were designed to provide for salary increases and increases in annual salary increments for most Cook County employees and many Cook County officers. The Supplemental Appropriation Bill provided that the new salaries were to be deemed in effect as of the start of fiscal year 1969 as to any employee or officer affected who had worked for Cook County during the first eight months of that fiscal year and who was still working for the County on the date of the adoption of the Supplemental Appropriation Bill. By resolution, the County Board then provided that the Supplemental Appropriation Bill was to supersede the Annual Appropriation Bill enacted on 20 December 1968, and the Position and Classification Plan of the Annual Appropriation Bill was to be superseded by the Revised Position and Classification Plan of the Supplemental Appropriation Bill.

Ultimately, cross-motions for summary judgment were considered. On 3 April 1973, the trial court granted defendants' cross-motion for summary judgment without stating any reasons for doing so. From that order, plaintiffs take this appeal.

In order to understand the contentions of the parties, it is first necessary to provide a summary of the statutory provisions relating to appropriations by the Cook County Board of Commissioners. The relevant provisions are found in sections 61.6—61.14 of "An Act to revise the

---

[2] Public Act 76—412, effective 15 July 1969, added the following language to the statute (Ill. Rev. Stat. 1969, ch. 34, par. 958):

"Notwithstanding the foregoing provisions of this Section [par. 958] or Section 61.7 [Ill. Rev. Stat. 1969, ch. 34, par. 952], the board of commissioners may, during the fiscal year 1969, adopt a supplemental appropriation bill or resolution in an amount not in excess of any additional revenue available to the county, * * * subsequent to the adoption of the annual appropriation bill or resolution for that fiscal year, for any proper corporate purpose. Such supplemental appropriation bill or resolution shall only affect revenue that was not available for appropriation when the annual appropriation bill or resolution was adopted, and the provisions of Section 61.9 [Ill. Rev. Stat. 1969, ch. 34, par. 954] relating to publication, notice and public hearing shall not be applicable to such supplemental appropriation bill or resolution or to the budget document forming the basis thereof."

law in relation to counties" (Ill. Rev. Stat. 1969, ch. 34, pars. 951-959). Section 61.7 (par. 952) provides that the county board shall adopt an annual appropriation bill within the first quarter of each fiscal year. Sections 61.8—61.10 (pars. 953-955) provide for the mechanics the county board is to use in the preparation of the annual appropriation bill, including public notice and hearings. Section 61.12 (par. 957) provides for amendments to the annual appropriation bill, but only within a very limited period of time after the annual appropriation bill is first adopted. Section 61.13 (par. 958) provides that after the annual appropriation bill has been adopted and after the expiration of the very limited period of time for amendment, no changes are to be made thereafter until the next annual appropriation bill (with certain exceptions in cases of casualty or charges imposed by law). Section 61.13 (par. 958) also contains the language of Public Act 76—412 which is set forth in footnote 2 above. Finally, section 61.14 (par. 959) provides for sanctions in cases of violations of section 61.13 (par. 958), but specifically states that these sanctions do not bar any other remedies at law or in equity. With this background, the contentions of the parties may be more readily understood.

Plaintiffs first contend that authorization of a supplemental appropriation bill does not constitute authorization of an appropriation bill which supersedes the annual appropriation bill. In so arguing, plaintiffs distinguish the term "supplement" from the term "amend". It is plaintiffs' theory that a "supplemental" bill can only appropriate for additional items for which no provision had been made in the annual appropriation bill. By way of contrast, plaintiffs urge that only an "amendatory" appropriation bill could permit the appropriation of newly available funds so as to effect a change in, or even to add to, items or purposes which had been covered in the annual appropriation bill.

If this first contention is not sustained, plaintiffs then contend that salary increases given to certain Cook County officers are void as contrary to two provisions of the Illinois Constitution of 1870, which was then in effect: Illinois Constitution of 1870, article X, section 10, and article IX, section 11. In addition, plaintiffs argue that salary increases to other employees and officers in the eighth month of fiscal year 1969 violate a specific statutory prohibition in section 61.17 (Ill. Rev. Stat. 1969, ch. 34, par. 1101), to which statutory prohibition Public Act 76—412 makes no express exception; and further that, when such salary increases are then made retroactive to the start of the said fiscal year for such employees and officers who worked for the County during the first eight months of the fiscal year and were still working for the County at the date of the adoption of the Supplemental Appropriation

Bill, such action constitutes a gift to such employees and officers, and a gift of county funds is an improper corporate purpose. Finally, plaintiffs contend that to uphold the Supplemental Appropriation Bill would result in an unlawful taking of taxpayers' property without due process of law.

Defendants respond that the Supplemental Appropriation Bill was authorized by the General Assembly's proviso to section 61.13 (par. 958). As such, the Supplemental Appropriation Bill related back to the beginning of the fiscal year so that any increases in compensation were not technically retroactive, nor were they in violation of any statutory or constitutional provision. Finally, the defendants argue that none of the Cook County officers who received increases in compensation were covered by the constitutional provisions prohibiting such increases in salary.

As can be seen, this case initially must turn on the meaning of "supplemental" within the terms of Public Act 76—412 amending section 61.13 (Ill. Rev. Stat. 1969, ch. 34, par. 958). In construing that term, we bear in mind that "[t]he cardinal rule in statutory construction is that the statute be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute." *Inskip v. Board of Trustees* (1962), 26 Ill.2d 501, 510, 187 N.E.2d 201, 206.

■■ Plaintiffs contend that the Supplemental Appropriation Bill enacted by the Board on 21 August 1969 was an "amendatory" rather than a "supplemental" appropriation bill and, as such, was not authorized by Public Act 76—412. It was amendatory because it changed some of the salary and compensation provisions of the annual appropriation bill, whereas a supplemental appropriation bill properly is one which would merely add further appropriations to the appropriations in the annual bill without changing any of the appropriations in the annual bill. Plaintiffs accurately cite, *inter alia, Swanson v. State* (1937), 132 Neb. 82, 271 N.W. 264, as holding the definition of "supplementary" for which they contend.

Defendants cite *Priest v. City of Wapakoneta* (1937), 8 Ohio Op. 435, 24 Ohio L. Abs. 230, 32 N.E.2d 758, which is a case involving a municipal appropriation ordinance. Under applicable Ohio statutes, the municipality was authorized to adopt subsequent ordinances either amending or supplementing its annual appropriation ordinance. Another Ohio statute provided that no ordinance or section thereof shall be amended unless the new amending ordinance contains the entire ordinance or section amended. The City of Wapakoneta, on 2 January 1936, had adopted its annual appropriation ordinance. Section 9 of that appropriation ordinance provided for an appropriation from the City's Electric Light Fund. On

26 March 1936, the City adopted an appropriation ordinance appropriating further funds from its Electric Light Fund for a proper additional purpose which had not been included in Section 9 of the annual appropriation ordinance. The ordinance of 26 March 1936 did not contain within itself any part of section 9 of the annual appropriation ordinance. In a class action a municipal taxpayer sued for injunctive relief on the contention, *inter alia*, that the ordinance of 26 March 1936 amended section 9 of the annual appropriation ordinance and was illegal for failure to contain within itself the whole of the said section 9. As to that contention, the court held that the appropriation ordinance of 26 March 1936 did not amend but rather merely supplemented section 9 of the annual appropriation ordinance, and therefore the requirements for an amending ordinance were inapplicable. In reaching this result, the court used definitions of the terms "amended" and "supplemental" which it conceded were definitions of those terms in a much narrower sense than the sense in which the terms were frequently and commonly used. It did so because the statute empowering a municipality to adopt appropriation ordinances subsequent to its annual appropriation ordinance used both the terms "amended" and "supplemented", so that, in order to give meaning to both terms, the narrower definitions had to be used for each term.

But the Ohio court also said that, in the broader sense, the term "amended" "comprehends the legal effect of any ordinance subsequently adopted relating to the subject matter of the original ordinance, including any ordinance adding to its provisions without making changes in its phraseology or effect." In other words, in its broader sense "amended" includes "supplemental."

In *Swanson*, (the holding of which supports plaintiffs' contention), the Nebraska court, however, cited and quoted from a New Jersey case (*Rahway Savings Institution v. Mayor and Common Council of the City of Rahway* (1890), 53 N.J.L. 48, 20 A. 756). The New Jersey court held that, for purposes of construing its State Constitution, the ordinary meaning of the term "supplemental" is "a supplying by addition of what is wanting," but then held further that the ordinary meaning will cover "every species of amendatory legislation which goes to complete the legislative scheme." In other words, "supplemental", even in its ordinary meaning, includes "every species of amendatory legislation which goes to complete the legislative scheme".

We conclude that the cases demonstrate that, for construction purposes, the meaning of "supplemental" for which plaintiffs contend is the accurate narrower meaning of the term; but that the term also has a broader meaning which includes "amendatory", and that "amendatory" also has a broader meaning which includes "supplemental".

We turn now to the construction of "supplemental" as used in Public Act 76—412. Sometime in 1969, after the Board had adopted its annual appropriation bill in December of 1968, the General Assembly had made available to the County an additional 23 million dollars. The State statute (Ill. Rev. Stat. 1969, ch. 34, par. 958) prohibited the County Board from making any changes in its Annual Appropriation Bill after the said bill had been adopted and after the very limited period of time for amendment had expired. But Public Act 76—412 was then enacted by the General Assembly as a part of, and as an exception to, section 61.13 (par. 958): "Notwithstanding the foregoing provisions of this Section [par. 958] or Section 61.7 [par. 952] * * *." By way of exception, then Public Act 76—412 empowered the County Board, but only during fiscal year 1969, to adopt a "supplemental" appropriation bill appropriating for any proper corporate purpose any additional revenue which had become available to the County after the adoption of its Annual Appropriation Bill. The supplemental appropriation bill was expressly restricted solely to such additional extra funds.

We think it very significant, for purposes of construction, that it was the General Assembly which made the additional funds available to the County after the usual deadline for making any changes in the annual appropriation bill, and it was the same General Assembly which then empowered the County Board to appropriate those funds (but only during the balance of the fiscal year 1969) by an Act which was added to the very statutory section prohibiting changes in the annual appropriation bill and which, by its terms ("notwithstanding"), created an exception to the provisions of that prohibitory section. In that context, we think that the term "supplemental" should not be construed in its narrower sense, but that it must be construed in the broader sense referred to by the New Jersey court as covering "every species of amendatory legislation which goes to complete the legislative scheme." We think that the narrower sense would not go to complete the legislative scheme, but would unnecessarily restrict it. It was the General Assembly which made the additional funds available to the County. It was the same General Assembly which then empowered the County Board to appropriate the additional funds and to do so "notwithstanding the foregoing provisions of this Section [par. 958] * * *." We think it clear that "supplemental" must be construed in its broader sense in order "to complete the legislative scheme" which we discern. We conclude that Public Act 76—412, authorizing a "supplemental" appropriation bill, authorized the amendatory appropriation bill which the County Board adopted.

In view of our construction of Public Act 76—412, we further concur with the defendants' position that the "doctrine of relation back" is ap-

plicable to permit the Supplemental Appropriation Bill to supersede the Annual Appropriation Bill. In *People ex rel. Pollastrini v. Whealan* (1933), 353 Ill. 500, 187 N.E. 491, the court held that an annual appropriation bill passed during the first quarter of the fiscal year related back to the beginning of that fiscal year. It would logically follow that an authorized supplement to an annual appropriation bill could likewise relate back to the start of the fiscal year, where, as here, the County Board so intended. (See dictum in *Atkinson v. Board of Education* (1963), 44 Ill.App.2d 92, 101, 194 N.E.2d 8, 13.) The same considerations which led the Supreme Court to allow an annual appropriation bill to relate back three months persuade us to allow this Supplemental Appropriation Bill to relate back to the start of the fiscal year as well.

Thus far herein, for the foregoing reasons, we have construed Public Act 76—412 to authorize the County Board's adoption, in August of 1969, of the Supplemental Appropriation Bill which superseded the Annual Appropriation Bill for fiscal year 1969, which had been adopted in late December of 1968. One consequence of such construction is the following: Since the Supplemental Appropriation Bill superseded the Annual Appropriation Bill, in effect it became the Annual Appropriation Bill for fiscal year 1969, and it provided salaries for the entire fiscal year in accord with the supersessive Revised Position and Classification Plan adopted together with the Supplemental Appropriation Bill. Hence, in legal effect, no prohibited change in salaries of officers and employees covered by the Revised Plan occurred *during* the fiscal year 1969 and there was no violation of section 61.17 (Ill. Rev. Stat. 1969, ch. 34, par. 1101). It was unnecessary, therefore, for Public Act 76—412 even to refer to that statutory provision, much less to designate itself as an exception thereto.

■ A second consequence of our construction of Public Act 76—412 is this: No element of gift or donation was involved in making the increased salaries payable (to the officers and employees covered by the Revised Plan and working for the County on the date of supersession) for such portion of the total fiscal year 1969 as they may have worked for the County in their respective classifications. The total salary which they received was compensation for services rendered by them during fiscal year 1969.

Plaintiffs have directed our attention to two sections of the 1870 Illinois Constitution which, they suggest, have been violated by the provisions of Public Act 76—412 as construed herein and by the three actions of the County Board taken pursuant thereto (namely, the Supplemental Appropriation Bill, the Revised Position and Classification Plan, and the Resolution providing for supersession). The first section is

section 11 of article IX (the Revenue Article). That section provides in relevant part that "the fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased or diminished during such term".

. At first blush, it might appear that a county officer would not be a municipal officer. But the cases construing the provision have consistently given the term "municipal officer" a very broad scope. In *Wolf v. Hope* (1904), 210 Ill. 50, 61, 70 N.E. 1082, 1086, our Supreme Court said in reference to the relevant portion of article IX, section 11, quoted just above:

"In our judgment the provision quoted from section 11 of article 9 of the constitution was intended to include all officers not specifically mentioned in other provisions of the constitution, occupying offices created by the laws of the State in and for any of the political subdivisions of the State * * *."

Specifically, *Peabody v. Forest Preserve District* (1926), 320 Ill. 454, 151 N.E. 271, holds that a county commissioner, while a county officer within the meaning of article X, section 10 of the 1870 Illinois Constitution, is also a municipal officer within the meaning of article IX, section 11. We note in particular that, in *Jimison v. Adams County* (1889), 130 Ill. 558, 565, 22 N.E. 829, 831 the court held that the county superintendent of schools was a "municipal officer" within the meaning of that term in article IX, section 11. It follows that the three county officers and the two classes of county officers to which plaintiffs have specifically directed our attention are "municipal officers" within the meaning of article IX, section 11: the county rabies inspector; the county superintendent of schools; the county purchasing agent; the county jury commissioners; and deputy sheriffs.

. Plaintiffs contend that the Supplemental Appropriation Bill operated to increase the salary of these municipal officers during their term of office in violation of article IX, section 11. Defendants contend that these municipal officers either had no definite term of office or, at most, had been appointed for a definite term of one year only (namely, the term of fiscal year 1969). In the former event, the provision of the Revenue Article would be inapplicable; in the latter event, the provision, while applicable, had not been violated owing to the supersessive character of the Supplemental Appropriation Bill, by reason of which the Supplemental Appropriation Bill had become, in effect, the Annual Appropriation Bill for fiscal year 1969.

Deputy sheriffs are not appointed by the sheriff for any definite term of office. (Ill. Rev. Stat. 1969, ch. 125, pars. 7, 8; ch. 34, par. 859.1.) Hence, article IX, section 11, is inapplicable to them. However, section

61.17 (Ill. Rev. Stat. 1967, ch. 34, pars. 1101) would appear to be applicable to them to prohibit change of their salaries during the fiscal year. The county rabies inspector is appointed annually (Ill. Rev. Stat. 1969, ch. 8, par. 23g, repealed by Pub. Act 78—795, § 22, effective 1 October 1973), as is the county purchasing agent (Ill. Rev. Stat. 1969, ch. 34, par. 1002). Hence, each has a definite term of office of one year and article IX, section 11 is applicable to them.

Plaintiffs do not contend that their one-year term of office was not coterminous with fiscal year 1969. Plaintiffs' contention that section 11 was violated as to the rabies inspector and the purchasing agent (and that section 61.17 (ch. 34, par. 1101) was violated as to deputy sheriffs) is based simply on plaintiffs' view that the Supplemental Appropriation Bill increased their salaries in the eighth month of fiscal year 1969. Under the construction, however, which we have herein given to the supersessive character of the Supplemental Appropriation Bill, the salaries of these officers were not increased during, and in the eighth month of, fiscal year 1969, but rather as of the very beginning of that fiscal year. Consistent with that construction, we conclude that there was no violation of article IX, section 11 as to the rabies inspector and the purchasing agent, and no violation of section 61.17 (ch. 34, par. 1101) as to deputy sheriffs.

The county superintendent of schools, however, presents a different case. This office was specifically authorized by article VIII, section 5, of the 1870 Illinois Constitution as an elective office, the term of which and the compensation for which were to be prescribed by law (*i.e.*, established by the legislature). Section 3—1 of the School Code (Ill. Rev. Stat. 1967, ch. 122, par. 3—1) provided that such an elective office shall exist in every county, beginning with the general election in November of 1962 and quadrennially thereafter. The four-year term of office so provided would commence in December of 1962 and quadrennially thereafter. Section 3—2 of the School Code provided that the salary of the county superintendent of schools should be as provided in section 27 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1967, ch. 53, par. 45). The latter provision, as to counties of more than 500,000, provided for an annual salary of $25,000, to be paid out of the State school fund, with authority to the county board to allow additional compensation, to be paid from the county treasury. It follows, therefore, that the Cook County superintendent of schools began a four-year term of office in December of 1966.

■■ From a study of the Annual Appropriation Bill for fiscal year 1969, we have determined that no appropriation whatever was made for the county superintendent of schools in that Annual Appropriation Bill. In

the Supplemental Appropriation Bill, however, there was an appropriation of $4500 for the county superintendent of schools. Owing to the supersessive character of the Supplemental Bill, that appropriation was made as of the beginning of fiscal year 1969. As such, it was made during the four-year term of office which began in December of 1966. If there had been no prior appropriation for that office during that term of office (*i.e.*, no appropriation for that office in the Annual Appropriation Bills for fiscal years 1967 and 1968), or if the appropriation for the office in the Supplemental Appropriation Bill for fiscal year 1969 was an increase over a prior appropriation for that office during that term of office (*i.e.*, in the Annual Appropriation Bills for fiscal years 1967 or 1968), then the appropriation in the Supplemental Appropriation Bill violated article IX, section 11. Since the record before us does not contain the Annual Appropriation Bills for fiscal years 1967 and 1968, we cannot determine the relevant facts and the cause must be remanded for such determination. The relevant facts to be determined are: 1) was an appropriation made for this office in the Annual Appropriation Bills for fiscal years 1967 and 1968? If not, the appropriation for fiscal year 1969 constituted a pro-hibited increase during the 1966-70 term of office; 2) if an appropriation was made for this office in the Annual Appropriation Bills for fiscal years 1967 and 1968, was that appropriation for an amount less than $4500? If so, the appropriation of $4500 for fiscal year 1969 constituted a pro-hibited increase during the 1966-70 term of office. If, as appears likely, there is no dispute as to these relevant facts, the entry of a summary judgment remain appropriate.

A similar situation exists as to the county jury commissioners. Each of the three of them had been appointed, one each successive year, to a term of office of three years, beginning on the first Monday of July in the respective year of appointment. (Ill. Rev. Stat. 1969, ch. 78, par. 24.) The Supplemental Appropriation Bill increased their salaries; owing to its supersessive character the salary increase occurred as of the start of fiscal year 1969. At that time, each jury commission was serving some part of a three-year term of office. It follows that, as to the county jury commissioners, Supplemental Appropriation Bill violated article IX, section 11.

The second constitutional provision which plaintiffs contend was vio-lated by the Supplemental Appropriations Bill, with particular reference to the three county officers and the two classes of officers specified above, is section 10, article X (Counties). In order to understand section 10, it is necessary first to refer to sections 8 and 9. An applicable to Cook County, section 8 provides for the existence of several specifically des-ignated elective county officers with four-year terms of office. Section

9, which has been construed to apply solely to Cook County (*Jennings v. Fayette County* (1881), 97 Ill. 419; *County of Cook v. Hartney* (1897), 169 Ill. 566, 48 N.E. 580), provides that the salaries of five of the seven are to be set by State law, are to be their only compensation, and are to be payable solely out of the fees of office actually collected; it further provides that the number of deputies and assistants to the said five officers is to be determined by rule of the circuit court, but that the compensation of the deputies and assistants is to be fixed by the County Board. Section 10 then provides that, except as provided in section 9, the county board is to fix the compensation of all county officers, with the proviso that the compensation of no officer shall be increased or diminished during his term of office. It is this proviso which plaintiffs contend was violated by the Supplemental Appropriations Bill with particular reference to the three county officers and the two classes of officers specified above.

In *Wulff v. Aldrich* (1888), 124 Ill. 591, 16 N.E. 886, the term "county officers" in section 10 appeared to have been given a broad scope; the court held that the term embraced all county officers of each county in the State, including the county officers of Cook County not specified in section 9. (Those officers were two: the county judge and the county clerk.) But in a subsequent case dealing, *inter alia*, with the issue of whether the legislature or the county board was the proper agency to fix the salaries of county civil service commissioners (*McAuliffe v. O'Connell* (1913), 258 Ill. 186, 101 N.E. 419), it was held that the *Wulff* court had been referring solely to elective constitutional county officers (*i.e.*, elective county officers whose offices had been created by the constitution), and that the term "all county officers" in section 10 embraced only all elective constitutional county officers with the exception of the five Cook County officers designated in section 9. The court then specifically held that section 10 was inapplicable to Cook County civil service commissioners because that county office had been created by the legislature subsequent to the adoption of the 1870 Constitution. In *People ex rel. North American Restaurant v. Chetlain* (1905), 219 Ill. 248, 76 N.E. 364, the court had already construed section 10 as having no reference to "an office created by the Legislature." Thus far, then, we conclude that the phrase "all county officers" in section 10 means all elective constitutional county officers except the five Cook County officers designated in section 9.

In fact, however, other cases have established yet a further exception to the phrase "all county officers" in section 10. That further exception excludes elective constitutional county officers for the setting of whose salary the Constitution has made a different provision. The different con-

stitutional provision is that their salaries shall be as prescribed by law (*i.e.*, as fixed by the Legislature). The different constitutional provision has been held to be a special provision which prevails over the general provision in section 10. In *People ex rel. Nauert v. Smith* (1927), 327 Ill. 11, 158 N.E. 418, the court held that, as to the county judge, the different provision in article VI, section 32, prevails over the general provision in article X, section 10, so that the legislature is the proper agency to fix the salary of the county judge. *Butzow v. Kern* (1914), 264 Ill. 498, 106 N.E. 338, held that article X, section 10, has no application to the State's Attorney, despite the fact that he is an elective constitutional county officer, because article VI of the Constitution, which created that county office, also provided that his salary was to be "as is or may be prescribed by law." *Jimison v. Adams County* (1889), 130 Ill. 558, 22 N.E. 829, held that article X, section 10, is not applicable to the office of county superintendent of schools because article VIII, section 5, which created that county office, further provided that the compensation therefor shall be prescribed by law. Finally, in *McFarlane v. Hotz* (1948), 401 Ill. 506, 82 N.E.2d 650, the court construed article X, section 10, as applicable only to elective constitutional county officers except the five Cook County elective constitutional officers specifically designated in section 9, and except those elective constitutional officers whose salary, by further constitutional provision, is to be as prescribed by law.

■■ It follows, therefore that article X, section 10, is not applicable to any of the three county officers or to either of the two classes of county officers to whom plaintiffs have directed our attention. The county rabies inspector is neither a constitutional nor an elective office. The same is true of the county purchasing agent and of the county jury commissioners. While it was held in *City of Winnebago v. Industrial Com.* (1968), 39 Ill. 2d 260, 234 N.E.2d 781, that, by reason of the mention of deputies in article X, section 9, deputy sheriffs were constitutional county officers (and as such were not "employees" within the scope of Illinois Workmen's Compensation Act), still they are not *elective* constitutional county officers. And, while the county superintendent of schools is an elective constitutional county officer, he is not within the scope of section 10 because the Constitution has provided that the legislature is to set his salary. The conclusion is that the Supplemental Appropriation Bill did not violate article X, section 10, as to any of the county officers or classes of officers to whom plaintiffs have directed our attention.

■■ Plaintiffs' final contention is that the Supplemental Appropriation Bill constitutes a taking of the property of plaintiffs, as taxpayers, without due process of law. The basis for this contention is that a tax levy may validly be made only pursuant to a valid annual appropriation bill

adopted by the County Board in the first quarter of a fiscal year, and that a failure to adopt such an annual appropriation bill vitiates any subsequent tax levy. Plaintiffs seek to apply this proposition as follows: Since the Supplemental Appropriation Bill which was adopted on 21 August 1969 superseded the Annual Appropriation Bill which had been adopted on 20 December 1968 for the fiscal year 1969 (which fiscal year ran from 1 December 1968 through 30 November 1969), the Annual Appropriation Bill became a spent arrow and its implementing tax levy Resolution fell with it. And since the Supplemental Appropriation Bill, despite its supersessive character, nevertheless was not in fact that Annual Appropriation Bill, no subsequent tax levy Resolution (even had there been one) could have implemented it. In fact, there was no valid implementing tax levy Resolution for the Supplemental Appropriation Bill. Hence, a tax levy based on the Supplemental Appropriation Bill constituted a taking of plaintiffs' property without due process of law.

We think, however, that the Supplemental Appropriation Bill, by supersessive substitution, in effect became the Annual Appropriation Bill for fiscal year 1969, and as such was implemented by the same tax levy Resolution which had implemented the superseded Annual Appropriation Bill. The Supplemental Appropriation Bill, as the new Annual Appropriation Bill for fiscal year 1969, took no more property than had the Annual Appropriation Bill which it superseded. The additional funds which it appropriated had already been taken by other valid and independent tax levies. We find no merit in plaintiffs' final contention.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County except as to the appropriations in the Supplemental Appropriation Bill for the county superintendent of schools and for the county jury commissioners. As to those appropriations, we reverse the judgment of the circuit court of Cook County, and we remand the cause to that court for its determination of the relevant facts (as specified above) as to the county superintendent of schools and then for the entry of any judgment as to those appropriations which is not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.

DOWNING, P. J., and LEIGHTON, J., concur.