(No. 19008.—)

JULIUS KREEGER, Appellant, *vs.* HENRY A. ZENDER *et al.*
Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 14, 1928.*

HENRY A. BERGER, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, (FRANCIS X. BUSCH, and CASSIUS M. DOTY, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

After a hearing upon a bill filed to restrain Henry A. Zender, as superintendent of public service of Cook county, and his deputies and employees, from continuing the operation of the central addressograph and tax machine division of the office of superintendent of public service and from in any manner performing any of certain duties mentioned in the bill which are alleged to be statutory duties imposed by law on the board of assessors, board of review, county clerk and county treasurer in connection with the assessment of property for taxation and the levy and collection of taxes, the mere enumeration of which, consisting of numerous items, occupies three pages of the printed abstract, and to restrain the board of commissioners of Cook county from ordering the issue of warrants for the payment of employees in the central addressograph and tax machine division of the office of the superintendent of public service for the fiscal year 1927, from making appropriation for the year 1928 for the compensation of employees of said division, from ordering the issue of warrants for the payment for tax machines equipment and other paraphernalia for said division and from making appropriations therefor during the fiscal year 1928, the circuit court of Cook county entered a decree dissolving the temporary injunction granted upon the filing of the bill and dismissing the bill for want of equity, from which Julius Kreeger, the complainant, appealed to the Appellate Court, and has appealed to this court from a judgment sustaining the decree.

The legal question upon which the case turns is the power of the county board to create the central addressograph and tax machine division of the office of the superintendent of public service and to provide for the performance by such division of the acts complained of.

The complainant is a resident and tax-payer in Cook county and the bill is filed in behalf of all other tax-payers as well as himself. The defendants answered, admitting or denying the various allegations of the bill, and the cause was heard upon bill and answer. From the bill and answer it appears that the county board, by resolutions adopted and contracts made in 1923 and subsequent years, organized a department under the superintendent of public service known as the central addressograph and tax machine division, caused to be installed for the use of that department addressing equipment and appurtenances, such as motor-driven graphotypes, motor-driven addressographs for personal property plates and general tax plates, and drawers and cabinets for addressograph plates, provided for the organization of personnel and employees of the division, fixing the number of positions, the annual salaries and the duties to be performed, and made appropriations for the payment of such salaries and the purchase of equipment and supplies and the payment of the expenses of the division, and that it was the purpose of the county board, and of Zender, acting under its authority, to maintain the division and expend the money of the county in its maintenance.

The proceedings for the assessment of property and the levy and collection of taxes are governed by the general Revenue act of 1872 as subsequently amended and as modified by the Revenue act of 1898 and its amendments. Section 155 of the act of 1872 provides: "It shall be the duty of every county collector to prepare tax receipts in triplicate for all taxes assessed, which shall be filled out in accordance with the requirements of section 163 of this act, one copy [of] which shall be mailed by such collector at least thirty days prior to the date upon which unpaid real estate taxes become delinquent, to the owner of the property taxed, or to the person in whose name such property is taxed, another copy of which shall be used by said collector in receipting for the tax paid, and the remaining copy there-

of to be retained by such collector. Provided, further, that there shall be printed upon each such receipt, or upon a separate slip which shall be mailed to each person assessed with the copy of the receipt hereinabove provided, a statement of the rates of the various taxes and the total tax rate." By section 182 of the same act the county collector, who is the county treasurer, is required to publish an advertisement giving notice of the intended application for judgment of sale of delinquent lands and containing a list of the lands and lots upon which the taxes or special assessments remain due and unpaid, the names of owners, if known, the total amount due thereon, and the year or years for which the same are due. Section 188 is as follows:

"Sec. 188. The collector shall transcribe into a book, prepared for that purpose, and known as the tax, judgment, sale, redemption, and forfeiture record, the list of delinquent lands and lots, which shall be made out in numerical order, and contain all the information necessary to be recorded, at least five days before the commencement of the term at which application for judgment is to be made; which book shall set forth the name of the owner, if known; the proper description of the land or lot; the year or years for which the tax or special assessments are due; the valuation on which the tax is extended; the amount of the consolidated and other taxes and special assessments; the costs and total amount of charges against such land or lot. Said book shall also be ruled in columns, so as to show the withdrawal of any special assessments from collection, the amount paid before the rendition of judgment; the amount of judgment, and a column for remarks; the amount paid before sale and after the rendition of said judgment, the amount of the sale, amount of interest or penalty, amount of cost, amount forfeited to the State, date of sale, acres or part sold, name of purchaser, amount of sale and penalty, taxes of succeeding years, interest and when paid, interest and cost, total amount of redemption, date of redemp-

tion, when deed executed, by whom redeemed, and a column for remarks, or receipt of redemption money."

Section 190 provides: "On the first day of the term at which judgment on delinquent lands and lots is prayed, it shall be the duty of the collector to report to the clerk all the lands or lots, as the case may be, upon which taxes and special assessments have been paid, if any, from the filing of the list mentioned in section one hundred and eighty-eight up to that time; and the clerk shall note the fact opposite each tract upon which such payments have been made. The collector assisted by the clerk, shall compare and correct said list, and shall make and subscribe an affidavit" in the form prescribed by the section, verifying the list.

The bill alleges that it is the duty of the county clerk, the board of assessors and the board of review to prepare all books, records, documents and collector's warrants in relation to the assessment of property for taxation, and the duty of the county treasurer, who is *ex-officio* county collector, to prepare and mail tax receipts for all taxes assessed, to publish an advertisement giving notice of the application for judgment for the sale of delinquent lands, to prepare a delinquent list to be filed in the county court, and the report to the county clerk of all the lands and lots on which taxes and special assessments remain due and unpaid, but that all of these functions and duties have been performed by the central addressograph and tax machine division, and that during the years 1923, 1924, 1925, 1926 and 1927 appropriations were made to said division aggregating large sums of money for the performance of duties imposed by statute on the county clerk, county treasurer, board of assessors and board of review, and during the same years appropriations were also made for the performance of said duties to the county treasurer, resulting in duplicate and double appropriations for the performance of the same duties. It is further alleged in the bill and admitted in the answer, that on March 21, 1927, the finance committee

of the county board reported that for the year 1927 the cost of tax record service imposed by law upon the county treasurer but performed by the addressograph and tax machine division was $39,964.66; "that during said year 1927 large numbers of tax bills have been prepared and written and skeletonized, containing descriptions of lands and lots, the extension of taxes, and aggregate amounts of said taxes, by the central addressograph and tax machine division, under the office of the superintendent of public service, for use by the county treasurer in mailing and delivering same to owners of said lands and lots, which mailing and delivery is required under said chapter 120, and there was also prepared by said central addressograph and tax machine division, under the office of the superintendent of public service, large numbers of personal property tax bills for use of the county treasurer, to be mailed and delivered to the persons owing said personal property taxes; and your orator avers the fact to be that these said tax bills, both real estate and personal property, were not used by said county treasurer, but that said county treasurer, claiming the said superintendent of public service had no right, power or authority to prepare the same, did prepare another set of tax bills containing said legal descriptions, the extension of taxes, the aggregate amount, and did also prepare another set of personal property tax bills, all of which he used in mailing and delivering the same to the owners of said lots and lands and to the persons owing said personal property taxes, and that by reason of such action large numbers of tax bills were unused and wholly wasted and large expenditures of money in the preparation thereof by the central addressograph and tax machine division, under the office of the superintendent of public service, were likewise wholly wasted, to the injury of this complainant;" that under the constitution and laws of the State the number of deputies and assistants of the county clerk and county treasurer is determined by rule of the circuit court, to be

entered of record; that for the year 1928 the county treasurer has filed a petition with the circuit judges for an allowance of employees in his office sufficient to perform all the duties imposed upon him by law, including the duties which have been imposed upon the division and performed by it; that it will be the duty of the judges to allow such petition and of the county board to allow and make appropriations for their reasonable compensation, and that the county board will also make appropriations for the performance of the same work by the division.

The answer denied that it was required by statute that the various officers prepare the forms, the duty of preparing which was delegated by the board to the superintendent of public service acting through the addressograph and tax machine division, and averred that prior to 1923, and before the invention and development of the improved machinery, devices and methods for doing the work of the various departments of the county relating to the entire process of the assessment and collection of taxes, the various entries required in each successive step were done manually, by pen and ink. This not only required a large number of assistants but also involved a great repetition of work, owing to the fact that the names of tax-payers, descriptions of property, amounts of assessments and other related matters were duplicated over and over again in the successive stages of the taxing process. By this method it was necessary for either the county clerk or the county treasurer to have this work done by hand and to have at the expense of the county a great number of deputies and assistants to do this particular work, and the method also was subject to many errors and involved a very large amount of time and expense. There were afterwards invented and devised machines for printing the various documents thus required in the taxing process by the so-called addressograph, duplicating or "ditto" machines, adding machines, and other devices, whereby, when the first set of documents

at the initial stage of the process was originated, there could also be made the necessary duplicates for use by the various county officers, including the county treasurer, for the performance by them of their respective duties. This method of providing the forms used in the process of assessment and collection of taxes also obviated the errors and delays necessarily involved in the manual process, and thus produced, when used by the various county officials, certainty of accuracy in all of the documents, a great saving in time and an enormous saving to the county in money. The county board, therefore, in 1923 adopted this mechanical system of having the work done, and the system has increased in efficiency and use throughout the county offices from the time of its adoption. The machinery and other devices required for this method were purchased by the county at a very large expense and have been for a number of years duly installed in the county offices, where their effective use is available to the county clerk, county treasurer, board of assessors and board of review, and failure on the part of any or either of said officers or boards to use the same and avail himself or themselves of the forms, blanks and other documents thus originated and duplicated can only result in imposing upon the county and the taxpayers a very heavy and entirely useless expense. Since 1923 the county treasurer, county clerk, board of assessors and board of review have availed themselves of this service in all matters connected with their duties as to the assessment and collection of taxes, thereby effecting a large saving to the county, and the discontinuance of this service and this method of originating and duplicating the enormous detail of papers required in the taxing process would involve great confusion, delay and increased expense. By authorization of the county board there was installed during 1923 a complete set of addressograph tax-extending and tax-billing machines and equipment necessary to render machine operation service in the origination of the various tax

records, bills, notices and other tax books, as required by the board of assessors, board of review, county clerk and county treasurer. This equipment included 1,200,000 real estate and personal property addressograph plates in 1923 and cost approximately $225,000, and these machines have been in regular operation since their installation. In addition, in the year 1926 there was installed a "ditto" machine for use in making copies of various records required in connection with park and country town special assessments and city special assessments. By the installation of this machine method, and the making thereby of skeleton forms containing the names, addresses, legal descriptions, tax extensions, etc., required by any or all of the four departments of the county having to do with tax matters, duplication of work and repeated manual copying of the same names, addresses, descriptions and tax extensions were avoided, at a saving to the county during the space of five years of approximately $3,750,000 and for the year 1926 of $1,050,970. At the time of adopting the method of machine operation service, the providing of an organization to operate and maintain the necessary machines and equipment was investigated by the county board, the circuit court and the respective tax departments. Since these departments require the use of the equipment at different periods of each year, the question of procuring and retaining experienced machine operators for each department, as required, was as material as the provision of the equipment for each department. As all the forms, beginning with the original assessment and closing with tax collection records, contained the same descriptions, names of owners and taxpayers, and other particulars, the only practical plan was for the county to establish a central organization to render the mechanical service of printing the forms and duplicates required by the different county offices for the successive steps in the assessment and collection of taxes throughout the year, and the duty of maintaining and operating the

central addressograph and tax machine division for rendering such service was imposed by the county board on the superintendent of public service, with the responsibility of operating the various machines and originating the skeleton records for use of the respective tax departments, including the county treasurer. The employees of this division are appointed under civil service, and are subject, as to assignment and salaries, to the superintendent of public service, but the schedules and extent of machine operation service in originating the various tax records are determined under the direction and approval of the respective tax departments. The names, addresses, descriptions and tax extensions required for the preparation of tax receipts, notices of application for judgment of sale of delinquent lands and delinquent lists to be filed in the county court are placed by the central addressograph and tax machine division of the office of the superintendent of public service on the appropriate forms, books and records and supplied to the county treasurer as needed by him, so that assistants and employees are not required in his office to perform again the work done by machines with greater accuracy and less expense. In 1923, 1924, 1925 and 1926, when the county treasurer and other county officers filed with the judges of the circuit court their applications for the allowance of employees in their offices, the duties of said officers and the nature of the work to be done by them was fully considered by said judges, and in determining the number of employees for said offices the judges took into consideration the fact that the forms required by the county clerk, county treasurer, board of assessors and board of review in the performance of their duties in the assessment of property would be printed by the central addressograph and tax machine division and furnished to each of said officers and boards. Such action of the judges was acquiesced in by the county treasurer and other county officers and regarded and followed by the county board in making ap-

propriations for said years and determining the compensation of the deputies and assistants of such county officers. Likewise, the judges of the circuit court, after hearing all the facts and evidence relating thereto, determined, by a rule entered of record on February 1, 1927, the number of deputies and assistants required by the county treasurer for the full performance of all of the duties of his office. Thereafter the county treasurer filed with said judges a supplemental petition, in which, as therein stated, he directed the attention of the judges to what he alleged to be the duties of the county treasurer as required by law in connection with the preparation and mailing of tax receipts, notices of advertisement for sale of delinquent lands and the delinquent list to be filed in the county court, and asked for a supplemental rule allowing him thirty-six men as additional deputies and assistants in his office for the preparation and mailing of tax receipts but not asking for any additional help to prepare said notices or delinquent lists. Upon the hearing of said supplemental petition the judges had before them and considered all of the facts and the law applicable thereto, and after a full hearing thereon entered an order denying the petition for a supplemental rule. The cause was heard on bill and answer, and it was stipulated that all allegations of fact in the bill and answer shall be taken as true.

The appellant's contention that the action of the county board in establishing the central addressograph and tax machine division is without authority of law is based upon the proposition that the acts authorized to be done by that division are acts which are fixed by law to be done by the county treasurer, and that the latter is entirely independent, in the performance of these duties, of the county board, which has no powers except those expressly conferred by statute or necessarily implied from the grant of those expressly conferred. (*Marsh* v. *People,* 226 Ill. 464; *County of Cook* v. *Gilbert,* 146 id. 268.) The county treasurer, by

virtue of his office, is the county collector of taxes in his county, and his duties as such collector are prescribed by various sections of the Revenue act. By section 7 of article 10 of the constitution it is provided that the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons. Section 25 of the act in relation to counties provides that "the county boards of the several counties shall have power: * * * Second, to manage the county funds and county business except as otherwise specifically provided." By section 26 of the same act the power is expressly conferred on the county board, "Third, to provide suitable books, stationery, printing and postage for the use of the county board, county clerk, county treasurer, recorder, sheriff, coroner, State's attorney, superintendent of schools, surveyor, judges and clerks of courts of record." Section 61, in relation to Cook county, provides: "Fourth, said board of commissioners shall have the management of the affairs of said Cook county, in the manner provided by law, and may exercise the same powers, perform the same duties, and shall be subject to the same rules, regulations and penalties prescribed by law for the board of supervisors in other counties, except as herein otherwise provided. * * * Seventh, the board of commissioners shall establish and provide for the appointment of a committee on finance and a committee on public service. There shall be a superintendent of public service, to be appointed by the president, by and with the consent of the board of commissioners, who shall hold his office for one year and until his successor is appointed. He may be suspended or removed by the president. He shall give a sufficient bond for the performance of his duties and be subject to the oversight and supervision of the committee on the public service. It shall be the duty of the superintendent, under authority of the board of commissioners, to purchase, receive and distribute all supplies necessary for the use and service of Cook county and

its various institutions, of whatever nature, including all supplies necessary for dieting the prisoners confined in the jail of said county, and to keep on and after the first Monday in December, 1910, accurate accounts of and vouchers for the same, which shall be open to the inspection of the president and the committee on public service and to the public. He shall also perform all other duties relative to the public service which may be assigned to him by the board of commissioners, who shall make and maintain regulations for the conduct and government of the department of public service not inconsistent with this act."

These provisions conferred the power and imposed the duty on the county board to furnish to the officers of the county all supplies necessary to the performance of their duties. The manner in which they were to be furnished was a part of the county business expressly committed to the county board. The forms of the triplicate receipts necessary for the use of the county collector, and the printed statement of the rates of the various taxes and the total tax rate, the advertisement of the list of delinquent lands, the tax judgment, sale, redemption and forfeiture record, and the report to the clerk, with the affidavit verifying it, and the other documents printed and provided by the central addressograph and tax machine division, were forms suitable and necessary for the use of the collector. It was for the county board to determine, in the exercise of its judgment, whether it could furnish these supplies for the use of its officers more advantageously through the superintendent of public service by the organization of a department for that service, or by authorizing each officer or board to provide his or its own supplies, or by some other plan. An immense quantity of the supplies is required each year. Many of them are duplicates, the same form being used by different officers. Before the organization of the tax machine division much of the work was done by hand, with pen and ink, and a large force of employees was engaged in each

office duplicating the work done in another office. This was the only method for doing the work. The inventions of the addressograph, duplicating machines, adding machines, and other devices, and the application of electricity to their operation, have made possible greater expedition and accuracy and a great saving of expense, and the necessary duplicates for use in the various offices can be made at the same time as the originals. The machines are expensive, and as they would be needed at different times in the year in the various offices and for only a part of the year, the purchase and use of them for each office separately would result in unnecessary expense. The organization of the central addressograph and tax machine division, under the superintendent of public service, for furnishing supplies to all the county officers in connection with the assessment of property and the collection of taxes was within the powers expressly conferred on the board by the legislature. During 1923 machines and equipment were installed at an initial cost of $225,000, which have been in regular use and operation ever since by the board of assessors, the board of review, county clerk and county treasurer with increasing efficiency and economy, at a saving to the county of $3,750,000 during five years and of $1,050,970 in the year 1926.

The county treasurer is not independent of the county board. He is only the collector of the revenue, the keeper of the funds, and the disburser, according to law, of such funds., The county board is the manager of the county funds and the county business, and it has the duty and responsibility of providing books, stationery, printing and postage for the use of the various county officers and of appointing a superintendent of public service to purchase, receive and distribute all supplies necessary for the use and service of Cook county. While the county treasurer is required to prepare and mail tax receipts in duplicate, he is not required to write them out with his own hand and per-

sonally deposit them in the post-office. He need not even sign them personally, but a receipt authenticated by his signature, either in person or by deputy, and mailed, complies with the requirement of the statute. The county board having established an agency for providing the necessary supplies to the treasurer may require him to procure such supplies as are required for the transaction of the business of his office through that agency.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*