The People of the State of Illinois ex rel. Mario Pollastrini, Appellee, v. Emmett Whealan et al., Appellants.

Gen. No. 36,204.

Opinion filed February 6, 1933.

JOHN A. SWANSON, State's Attorney, JOHN E. PED-
DERSON and LOUIS H. GEIMAN, Assistant State's Attor-
neys, for appellants; HAYDEN N. BELL, of counsel.

VICTOR FROHLICH, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opin-
ion of the court.

Petitioner, a deputy bailiff of Cook county, under
the sheriff, seeks by mandamus to have the defendants,
who are Cook county officials, certify and issue
vouchers for his salary for the first half of Septem-
ber, 1931, at the rate of $180 monthly, and also for the
period from December 1, 1931, to March 13, 1932, at
the rate of $180 per month. Defendants filed an an-
swer, and petitioner a replication. Evidence was
heard, after which the court rendered a decision in
favor of the petitioner and awarded the writ.

The question presented is whether the county board
of Cook county, after it has made the appropriation
for the salary of a county employee, may, during the
period covered by the appropriation, change the rate

of his compensation. Judge Thomas Taylor, who heard the case, rendered an oral opinion which is in the record and which we shall follow.

Under the Constitution, Article 10, section 9, the number of the deputies and assistants of the county officers shall be determined by rule of the circuit court, and their compensation shall be determined by the county board. The number so fixed by the circuit court cannot be changed by the county commissioners. The number being fixed, each head of the department is, alone, entitled to employ his deputies and assistants. The county board has nothing whatever to do with their actual employment or discharge; its only function is to fix their compensation. In determining what they shall be paid the county board has a financial report prepared, and from that a budget, and then a final formal appropriation is made which is published and in which is set forth in detail the compensation to be paid to each employee.

The department head, in this particular case the sheriff, after receiving from the comptroller a printed form, fills in the name of each deputy and assistant, the date and wages as fixed in the appropriation made, and the daily time and services rendered. He signs this under oath or otherwise as a pay roll and it is then transmitted to the county comptroller. The amount due each employee is thus on the books and in the officially recorded proceedings of the county board, in the hands of the county comptroller, and the amount admittedly due each employee is thus shown as an ascertained, liquidated and admitted sum, due at a particular time, for specific services to a particular person, by name, and all that remains to be done to consummate actual payment to the employee are a few simple administrative acts, which do not call for judgment or discretion on the part of the county comptroller, the county treasurer, or any other county official.

These acts are, the county comptroller prepares a paper which is an identification slip and also a receipt for salary, to be signed by the employee; he then prepares an appropriate warrant or check on the county treasurer which is given to the employee upon his signing the identification slip and receipt; the employee then presents this to the county treasurer who pays the same.

The financial report prepared by the county board, and the budget and the appropriation for the fiscal year beginning the first Monday in December, 1930, were made as provided by statute, Cahill's St. ch. 34, ¶ 66 (6). In the appropriation bill it is provided:

"4. That the salaries or rates of compensation of all officers and employees of the County as hereinafter named, when not otherwise provided by law, shall be in accordance with the salaries and rates of compensation of the offices and places of employment as fixed in the resolutions adopted by the Board of County Commissioners prior to the adoption of this annual appropriation bill and shall not be changed during the year for which the appropriation is made." This included a provision for the payment of deputy bailiffs in the sheriff's office at the rate of $180 per month.

The county comptroller made out and sent to the sheriff a document entitled "Payroll Covering Services Rendered," showing the names, among others, of 47 deputy bailiffs, including specifically the name of petitioner, and the amount due him on September 15, 1931, namely, $90; this was approved and signed as a correct pay roll by the chief deputy sheriff and was transmitted to the county comptroller. The evidence shows that petitioner has made a demand upon the county comptroller to issue the usual identification slip and receipt for salary for said half month, and a warrant or check upon the county treasurer; this de-

mand has been refused and petitioner's salary for the half of September, 1931, has not been paid to him.

The defendants base their refusal to pay petitioner upon a resolution adopted by the county board June 29, 1931. This resolution refers to the present economic depression and the serious increases in tax delinquencies and states that this requires definite action on the part of all public officials in the way of retrenchment. It therefore proposed to repeal all prior resolutions authorizing vacations and other leaves of absence with pay, and the heads of the various county offices were requested and directed to make arrangements whereby "all employees and officers, including all elected officials, shall each take an enforced vacation without pay of not less than two weeks." It further directed:

"that the heads of the departments prepare and submit to the county board the semi-monthly payroll for the first half of September, certifying to the periods of enforced vacations without pay of all officers and employees and all such payroll deductions for enforced vacations without pay of all officers and employees and all such payroll deductions for enforced vacations shall be made in all of the offices, departments and institutions on such semi-monthly payroll record.

"that all County offices, departments and institutions in preparing all future payrolls shall report the periods of vacation without pay of all officers and employees, and the County Comptroller and the Civil Service Commission in checking the payrolls of the various offices, departments and institutions shall keep a record of the vacation periods without pay, of the various officers and employees and the Comptroller shall withhold certification to the salary of any officer or employee, nor shall any payment be made or allowed by the County Treasurer where the vacation without pay of any officer or employee during this fis-

cal year is less than that provided for under this resolution.

"that copies of this resolution shall be sent to the heads of each of the County Offices, departments and institutions for their guidance in arranging and designating vacation periods without pay to all officers and employees and to the Civil Service Commission, the County Comptroller and County Treasurer for fiscal and payroll control in accordance with the provisions of this resolution."

As we have heretofore said, the county board has no authority or power to employ or discharge any employees in the offices of the county under consideration. Neither has it any authority to order the heads of the various county offices to make arrangements whereby employees shall take an enforced vacation without pay.

It is not seriously contended that the county board has any authority over the rate of compensation or vacations of the "elected officials," such as the superior and circuit court judges and elected clerks, sheriff, treasurer and recorder, or any officer whose compensation is fixed by statute. The compensation of the judges of the superior and circuit courts cannot be changed during their term of office. Section 25, Article 6, Constitution. *People v. Sweitzer,* 280 Ill. 436, held that it was beyond the power of the legislature to increase or diminish these salaries during the term of office, for otherwise there would be "a suspicion of such a thing as coercion by reducing salaries or a reciprocal interchange of favors by increasing salaries." If the legislature cannot do this, certainly no such power is or should be in the county board, which is a frequent litigant and has many other significant contacts with the courts. Sec. 10, Article 10, provides that "the compensation of no officer shall be increased or diminished during his term of office."

Cahill's St. ch. 34, ¶ 66 (9), provides that "The salaries or rate of compensation of all officers and em-

ployees of said county, when not otherwise provided by law, shall be fixed by the board of commissioners and shall be fixed prior to the adoption of the annual appropriation, and shall not be changed during the year for which the appropriation is made.'' The county appropriation bill also contained a provision that the salaries and rates of compensation of the employees shall not be changed during the year for which the appropriation is made. It follows, therefore, that the resolution of the county board adopted June 29, 1931, in so far as it attempted to change the compensation of the county officers and employees, was invalid. As it is shown that petitioner performed services for the county during the first two weeks of September, 1931, for which he has not been paid, he is entitled to the writ of mandamus in this respect.

In *People v. Stevenson,* 272 Ill. 215, it was held that ''The issuance, signing or countersigning of a warrant upon the proper fund may be compelled by mandamus where the claim has been duly liquidated, audited and allowed or where it clearly appears that the claim is properly due and payable.'' In *People v. County of Cook,* 274 Ill. 158, it was held that mandamus would lie against a municipal corporation to enforce the payment of a claim ascertained to be due, such as the salaries of officers fixed by law.

The same considerations apply to the claim of petitioner for compensation at the rate of $180 a month for the period from December 1, 1931, to March 13, 1932. He was employed in the sheriff's office continuously during this time and was certified upon the pay rolls for this time at a salary of $180 a month.

By statute, Cahill's St. ch. 34, ¶ 66 (6), it is provided that:

''Said board of commissioners shall, within the first quarter of each fiscal year adopt a resolution, to be termed the annual appropriations bill, in and by which resolution said board shall appropriate such sums of

money as may be necessary to defray all necessary expenses and liabilities of Cook County, to be by said County paid or incurred during and until the time of the adoption of the next annual appropriation bill under this section.'' That ''such appropriation bill shall not take effect until after it shall have been once published in a newspaper published in Chicago''; and (Cahill's St. ch. 34, ¶ 66 [9]) ''the salaries or rate of compensation of all officers and employees of said county, when not otherwise provided by law, shall be fixed by the board of commissioners and shall be fixed prior to the adoption of the annual appropriation, and shall not be changed during the year for which the appropriation is made.''

It follows, as a matter of law, that the reduction to the extent of 15 per cent in the salary of the petitioner as provided in the appropriation of March 5, 1932, and published on March 13, 1932, took effect as to salaries from that time on, and did not relate back; and that, therefore, the petitioner was entitled to $180 per month from December 1, 1931, until the appropriation bill of 1932 became effective on March 13, 1932. There is therefore due to the petitioner a balance of $618, being the amount of his salary at the rate of $180 a month for that time. All that remains to be done on the part of the defendants is merely the administrative acts involved in issuing the appropriate vouchers and warrants. ''The above seems to be consonant with that which is reasonable. To decide otherwise would be to injure public employees by arbitrary *ex post facto* conduct upon the part of the employer; to obtain service without compensation.'' (Judge Taylor's opinion.) Respondents make no argument against this view.

The purposes of the county board as set forth in the preamble to the resolution of June 29, 1931, may be highly commendable, but this would not justify actions contrary to law. The board cannot usurp functions which legally it has no power to perform.

Defendants assert in this court that the county of Cook is a necessary party to any proceeding affecting the finances or affairs of the county. The petitioner is not asking that the county of Cook perform any functions. These have already been performed by the passage of the annual appropriation bill fixing the salaries.

In addition to the power to fix the compensation of county employees, subject to the conditions just stated, the county board has powers relating to orders and the purchase of supplies, material, equipment, and like matters. It was the purchase of supplies that was under consideration in *Kreeger v. Zender,* 332 Ill. 519. In such matters courts will not interfere in the management of the county affairs where such acts are done under the legislative and discretionary powers of the board. In *Fitzgerald v. Harms,* 92 Ill. 372, quoted at length in defendants' brief, the court was considering the construction of a county courthouse. The opinion said the courts were powerless to interfere with the conduct of the commissioners ''so long as they keep within their jurisdiction.'' By the resolution above mentioned the board attempted to control matters which were beyond its jurisdiction.

No authority is cited which supports the contention that the burden is on the petitioner to show that the county treasurer has in his hands sufficient funds to pay the amount due him for salary. Counsel for defendants erroneously assume that the petitioner is requesting some action by the county board. We repeat, the decree simply orders the defendants to sign vouchers and issue warrants payable to the petitioner in the amounts set forth in the decree. These are purely administrative acts.

The reasons moving the trial court to his conclusion can hardly be questioned. The decree was proper and is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.