LOWELL HELLER *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY BOARD OF JACKSON COUNTY, Defendant-Appellant.

Fifth District   No. 78-276

Opinion filed March 23, 1979.

Howard L. Hood, State's Attorney, of Murphysboro (William G. Schwartz, Assistant State's Attorney, of counsel), for appellant.

Earl S. Hendricks, Jr., of Hendricks & Watt, of Murphysboro, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

The county board of Jackson County appeals from the judgment of the Circuit Court of Jackson County entered in favor of plaintiffs, Lowell Heller, supervisor of assessments of Jackson County, and Debra Beckman, an employee of the office, enjoining the board from interfering with the operation, control and management of the supervisor of assessments' office; from writing job descriptions for the office; from employing personnel for the office without the request or approval of the supervisor of assessments; from directing the employees of the office in the performance of their duties; and requiring the board to restore the salaries of the plaintiffs established in the budget and appropriation ordinance for the 1976-77 fiscal year.

Heller's complaint alleged that the county board of Jackson County, sometimes acting through one or more of its committees, consistently "interfered" in the operation of his office by removing from his direction and supervision his statutorily imposed duties and responsibilities; by establishing job descriptions for the employees of his office without his consent; by hiring employees for his office without his consent and directing them in the minutiae of their employment; by purchasing supplies for his office without his consent; and by generally relegating him to the status of an employee in his office. Both Heller and Beckman, an employee of the office, complain that their annual compensation was unlawfully reduced.

The county board of Jackson County appointed plaintiff, Lowell Heller, supervisor of assessments for a four-year term commencing in June 1975. His salary was initially fixed at $12,500 per annum and for the fiscal year commencing December 1976 was raised to $14,000. It is apparent that the county board became dissatisfied with Heller's performance as supervisor of assessments as requests were made to the state's attorney by members of the county board to institute proceedings for his removal from office under sections 322-24 of the Revenue Act of 1939. (Ill. Rev. Stat. 1975, ch. 120, pars. 803 through 805; *Macaluso v. West*, 40 Ill. App. 3d 392, 352 N.E.2d 382 (5th Dist. 1976).) The Board also requested the Department of Local Government Affairs to conduct a study of the assessment and collection of taxes in Jackson County. The result of this study as it pertains to the supervisor of assessments' office was a suggestion that job descriptions be promulgated for the supervisor and employees of the office.

The state's attorney declined to institute removal proceedings. What followed was either an attempt by the county board to force Heller's resignation, as he testified was his belief, or a relegation of his status to that of an employee of the office and clerk to the board of review and the elevation of an employee in the office to *de facto* supervisor of

assessments, as the trial court found in its detailed findings of fact. Either conclusion is supported by the evidence.

In June 1977, the county board of Jackson County undertook to reorganize the office of supervisor of assessments by adopting job descriptions for the supervisor of assessments and the employees of his office. A position of "property record card supervisor" was created by the board and all employees of the office were placed under his direct supervision except the plaintiff, Debra Beckman. Her former position of chief clerk, a "Level V" clerical position under the existing organization of the office, was abolished and her position was reclassified as a "Level III" position, described as a receptionist. Under the reorganization of the office, she was the only employee working under the direct supervision of the supervisor of assessments. The reorganization of the office was accomplished under job descriptions prepared by the person who became the property record card supervisor and was assigned the title of assistant supervisor of assessments by action of the county board. The organizational structure approved by the board placed the property record card supervisor nominally under the direction of the supervisor of assessments; although, at a meeting of the office personnel with members of the county board, all, but plaintiff Beckman, were instructed that they were under the direct supervision of the property record card supervisor.

Simultaneously, the annual salary of the supervisor of assessments was reduced from $14,000 to $9,000 by amending the budget and appropriation ordinance in the middle of the fiscal year. At the same time, the annual salary of the property record card supervisor was increased from $9,000 to $12,000. The annual salary of plaintiff, Debra Beckman, was reduced by approximately $1,200 as a result of the reclassification of her position from chief clerk to receptionist. This reorganization of the supervisor's office was accomplished without consultation with Heller.

Complaint was also made that the county board employed deputies and clerks to work in the assessor's office without the consent of the supervisor of assessments and that supplies were purchased for the office other than through the established purchasing procedure established by the county board for county offices.

The trial court's findings of fact were that the action of the county board:

"1. Created the position of Property Record Card Supervisor and placed him in charge of the Office, including all record cards, maps and other vital functions of the office pertaining to the assessment of real estate taxes, and fixed job descriptions for this employee, William Massey, relegating the duly appointed officer, the plaintiff Lowell Heller, to an inferior position comparable to that of Massey's assistant.

2. Divested Heller of fixed statutory duties delegated to the Supervisor of Assessments by the legislature and not to the County Board, its Chairman or any Board Committee, and created a job description for the Supervisor of Assessments contrary to that fixed by statute.

3. Fixed other job descriptions for employees in the office. Interviewed applicants for positions in the office, selected, hired and placed the majority of the employees in the office under Massey's control and direction without any authority of Heller to hire, fire, discipline, assign or supervise either Massey or the other employees in his office or to require their accountability to him for the performance or non-performance of their respective duties, with the exception of one employee, who was Heller's former Chief Clerk, reclassified by said Board to the position of receptionist, being the plaintiff Debra Beckman.

4. Subsequently changed the title of Massey's position by adding the term 'Assistant Supervisor of Assessments' without in any way materially changing his duties or the operations and functions of the office, and added the duties to 'act in the stead of the Supervisor of Assessments in his absence,' thus in effect appointing a non-qualified person to the office without statutory or any other authority.

5. Reduced the salary of Heller by 35% to $9,000, and increased the salary of Massey to $12,000, whereby the Supervisor of Assessments' salary was 25% less than that of his newly designated 'Assistant', during Heller's four year appointed term and after the Annual Budget for fiscal year 1976-77 had been adopted and filed, and prior to the adoption of the 1977-78 Budget.

6. Reduced the salary of plaintiff Debra Beckman, the only employee remaining under Heller's direct supervision and changed the job description for her position, as previously submitted by Heller, after the Annual Budget for the fiscal year 1976-77 was adopted and filed by the County Board and prior to the adoption of the 1977-78 fiscal year Budget.

7. Made a direct request to the Illinois Department of Public Affairs for a study of the operations of the Supervisor of Assessments' Office and after the study was conducted, without input from Heller, received said Department's report, (which contained some recommendations only—not directions) and without referral to said Supervisor of Assessments changed the management, lines of authority and duties of all employees in the office. The Court does not find that said actions of the Board were

either dictated by or necessarily in keeping with the Department's Report * * *.

    8. Ordered supplies and equipment for the office directly, without following uniform standard practices set up by the Board for all County Officers, which require requests by approval and written purchase orders from Heller."

■■ These findings are amply supported by the evidence and are clearly not against the manifest weight of the evidence.

■■ The duties of the supervisor of assessments, a county officer, are fixed by statute. He is to make and maintain property record cards (Ill. Rev. Stat. 1977, ch. 120, par. 483); make and maintain tax maps and up-to-date lists of the ownership of all real estate in the county and records of transfers of real property in accordance with procedures established by the Department of Local Government Affairs of the State of Illinois (Ill. Rev. Stat. 1977, ch. 120, par. 484b); and in general is assigned the responsibility under the Revenue Act for all functions relating to the assessment of property (see, e.g., Ill. Rev. Stat. 1977, ch. 120, pars. 522, 523, 582, 584).

Section 25.34 of the Counties Act (Ill. Rev. Stat. 1977, ch. 34, par. 429.18) provides:

    "No county board may alter the duties, powers and functions of county officers that are specifically imposed by law. A county board may alter any other duties, powers or functions or impose additional duties, powers and functions upon county officers. In the event of a conflict state law prevails over county ordinance.

    This amendatory Act of 1972 does not apply to any county which is a home rule unit."

The parties agree that the supervisor of assessments is a county officer and that Jackson County is not a home-rule county.

■■ ■ We believe the General Assembly intended that the office of supervisor of assessments operate free from interference in the important and often highly unpopular function of assessing property for purposes of taxation. Thus the supervisor of assessments is given a form of tenure. He is appointed for a four-year term and may only be removed for cause after judicial proceedings. (Ill. Rev. Stat. 1977, ch. 120, par. 803-05.) This court has so held in *Macaluso v. West*, 40 Ill. App. 3d 392, 352 N.E.2d 382 (5th Dist. 1976). The Act entitles the incumbent supervisor of assessments to a public hearing before the county board in the event he is not reappointed. *People ex rel. Endicott v. Huddleston*, 34 Ill. App. 3d 799, 340 N.E.2d 662 (5th Dist. 1975); Ill. Rev. Stat. 1977, ch. 120, par. 484a. ■■ ■ The parties attach much significance to the preparation of job descriptions for the supervisor of assessments and the employees of his

office, specifically whether they were prepared by the County Board without Heller's assistance or whether Heller was consulted and had at least some input into their making. Actually Heller testified that the only fault he found with the job descriptions was with the chief clerk, the position formerly occupied by Beckman, being reclassified as a "Level III" rather than a "Level V" employee; that he would clearly state that the property record card supervisor was answerable to him; and that the chief clerk should be in charge of the office in his absence. The supervisor of assessments cannot expect, nor has he a right, to operate his office without any control of the county board, the body ultimately responsible to the public for the expenditure of public monies and the total operation of county government. The county board has both executive and legislative functions in its relationship to county officers. It has the power and responsibility to create salary classifications of general applicability for all county offices, elected or appointed, to the extent that it can require certain proficiencies for clerks and deputies by establishing salary schedules, may establish hours of work and other general guidelines and conditions of employment. It cannot, however, adopt organizational charts and job classifications the effect of which is to divest the supervisor of assessments of the duties and functions vested in him by law enacted by the General Assembly nor may the county board perform his duties or direct the manner in which they shall be performed. We reject the county board's argument that the power conferred on it by section 25.34 of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par. 429.18) or that any of the powers given county boards (Ill. Rev. Stat. 1975, ch. 34, pars. 303, 401 *et seq.*) give it the power to manage or control the day-to-day operation of any county office. We need not decide the precise line of demarcation separating the authority of a county officer and that of the county board. We are satisfied that the action of the Jackson County board here taken exceeds its proper power and authority.

■■■ It is equally clear that the county board may not hire employees in the supervisor's office. Section 3b of the Revenue Act provides that the supervisor of assessments "❋ ❋ ❋ may, by and with the advice and consent of the county board, appoint necessary deputies and clerks, their compensation to be fixed by the county board and paid by the county." (Ill. Rev. Stat. 1975, ch. 120, par. 484b.) We consider this language free from any ambiguity. The county board may not hire employees for the supervisor's office. It may only advise and consent. The trial court found that the action of the board exceeded rendering advice and consenting to the employment of clerks and deputies. This finding is supported by the evidence. The same may be said of purchasing supplies and equipment for the supervisor's office. While it is clear that the board may establish

uniform procedures governing the purchase of supplies and equipment (*Kreeger v. Zender*, 322 Ill. 519, 532, 164 N.E. 15, 20 (1928)), the trial court found that here the board departed from the established procedure as part of its effort to remove from the duly appointed supervisor his statutory functions and duties. Again, this finding is supported by the evidence.

Section 3b of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 484b) provided that any person appointed supervisor of assessments "*  *  * shall receive annual compensation in an amount fixed by the county board within the following ranges: *  *  *." In the case of Jackson County the amount was not less than $9,000 nor more than $17,700.

■■ The supervisor of assessments argues that the county board may not reduce his salary after passage of the budget and appropriation ordinance for the fiscal year. The trial court so ruled and we agree. We do not believe that the statutory provisions governing county budgets and appropriations (Ill. Rev. Stat. 1975, ch. 34, pars. 2101-2107) authorize the reduction of a county officer's salary, or an employee's salary in the case of plaintiff Beckman, by arbitrary action of the county board after the salary has been established by line-item budgeting in the annual budget and appropriation ordinance; it is not suggested that there was any fiscal crisis in Jackson County or that monies were unavailable for payment of these salaries. As we understand the position of the county, the impropriety of these salary reductions is not seriously contested. Both Heller and Beckman are entitled to receive as salaries the amounts budgeted and appropriated in the general appropriation ordinance adopted for the 1976-1977 fiscal year.

Heller further claims that his salary cannot be reduced during the term of his employment. It is not clear if he claims the salary at the beginning of his term in 1975, the sum of $12,500, or the amount to which it was raised in 1976, $14,000. Apparently the parties interpret the trial court's judgment as granting Heller a salary of $14,000 for the remainder of his appointed term which ends in 1979. Under either interpretation we believe the trial court to be in error.

■■ The language of the statute implies that the county board shall annually establish the compensation of the supervisor of assessments within the statutory range for each appropriation year; therefore, his salary may be reduced or raised on an annual basis. (Ill. Rev. Stat. 1975, ch. 120, par. 484b.) Contrary to plaintiff's assertion, it has been long established that a public officer's employment does not constitute a contract with his employer. Statutes fixing salaries and terms of employment do not create private contractual rights. (*Dodge v. Board of Education*, 302 U.S. 74, 82 L. Ed. 57, 58 S. Ct. 98 (1937); *Crumpler v.*

*County of Logan*, 38 Ill. 2d 146, 230 N.E.2d 211 (1967).) In *Gathemann v. City of Chicago*, 263 Ill. 292, 104 N.E. 1085 (1914), the court stated:

> "It is a general rule, when not qualified or restricted by positive law, that the power that creates an office may abolish it in its discretion, and this rule applies to municipal officers. The salaries of such officers may be reduced or otherwise regulated, as the municipality may decide." (263 Ill. 292, 295.)

In the case of elected officers, article VII, section 9(b) of the Illinois Constitution of 1970 provides that "[a]n increase or decrease in the salary of an *elected* officer of any unit of local government shall not take effect during the term for which that officer is *elected.*" (Emphasis added.) During the debates at the constitutional convention, a proposal that this provision include appointed as well as elected officers was rejected. 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3409-3411.

■■ Section 3—13—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—13—1) provides that the salaries and compensation of appointed municipal officers may be increased but not diminished during their appointed terms. Heller argues that the supervisor of assessments comes within the protection of this statute as a municipal officer. We believe this argument patently erroneous and not supported by *Peabody v. Forest Preserve District*, 320 Ill. 454, 463, 151 N.E. 271, 275 (1926), or *Kron v. Kucharski*, 31 Ill. App. 3d 954, 335 N.E.2d 160 (1st Dist. 1975), cited as authority. Those cases are concerned with provisions of the Illinois Constitution of 1870 and with certain officers of Cook County who had a dual function as both county and municipal officers. We do not consider the supervisor of assessments to have any function as a municipal officer. Furthermore, section 3—13—1 is a statutory provision, as is section 3b of the Revenue Act. The latter act, which specifically directs the county board to fix annually the supervisor of assessments' salary within the statutory range, would prevail over the general provisions of section 3—13—1, if we were to consider the supervisor of assessments to come within its general terms, as statutes *in pari materia* must be construed together.

■■ Heller acknowledges that the General Assembly could reduce his salary during his appointed term (*Crumpler v. County of Logan*), but denies that the county can reduce his salary notwithstanding the express authority given the county by section 3b of the Revenue Act to fix the supervisor's salary annually. We find no merit to this argument. The county board exercises power expressly granted it by the General Assembly when it exercises the power given it under section 3b of the Act. Its power and authority stand on the same footing as though the act were

that of the General Assembly. The distinction is one without substance. Jackson County, not a home-rule county, stands in the same relationship to the State as it did before the adoption of the Constitution of 1970 insofar as its power to exercise legislative power is concerned. It is a political subdivision of the State and exercises such power as may be granted to it. The legislature has expressly granted it the power to fix the supervisor of assessments' salary annually.

■■ While plaintiff Beckman's salary may not be reduced by altering the job description of her position during the 1976-1977 fiscal year, subsequent years stand on a different footing. The county board clearly has the authority to establish job classification and salaries for the employees of the supervisor's office for subsequent years; although, it may not assign employment to any particular position within the office, a power reserved to the supervisor of assessments.

■■ The county also asserts that the trial court erred in denying its request for a bill of particulars filed two days before the matter was scheduled for trial. We find no abuse of discretion considering the request was on the eve of trial, long after the pleadings had been settled.

Lastly, the plaintiffs request that they be allowed attorney fees both in the trial court and on appeal. The trial court denied this request. We find no authority either by statute or decision for such an allowance. See *Pechous v. Slawko*, 64 Ill. 2d 576, 592, 357 N.E.2d 1144, 1153 (1976).

■■ The judgment of the Circuit Court of Jackson County is accordingly affirmed except that part requiring the county to pay plaintiffs the compensation fixed in the 1976-1977 budget and appropriation ordinance beyond that fiscal year. As to subsequent years, we do not know what action the county has taken with respect to plaintiffs' respective salaries. The cause is remanded to the Circuit Court of Jackson County for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part; remanded.

G. MORAN, P. J., and JONES, J., concur.