*In re* OBJECTION OF LINDA LOU COOK TO REFERENDUM PETITION OF MARJORIE PIERCE (Linda Lou Cook, Appellant, *v.* Marjorie Pierce, Appellee).

Fifth District   No. 5—83—0303

Opinion filed March 2, 1984.

Edward C. Eberspacher III, Special Assistant State's Attorney, of Dove & Dove, of Shelbyville, for appellant.

Joel R. Monarch and Daniel P. Madden, both of Chicago, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Linda Lou Cook, the supervisor of assessments for Shelby County, Illinois, brought this action to challenge the constitutionality of a petition for a referendum to make her position elective instead of appointive. She appeals the April 12, 1983, judgment of the circuit court of Shelby County upholding a decision of the Shelby County electoral board in favor of Marjorie Pierce, principal proponent of the referendum. Three issues are presented for our review. First, was the office of supervisor of assessments created by the legislature pursuant to revenue provisions of the Illinois Constitution (Ill. Const. 1970, art. IX, secs. 4(a), (7)) and therefore not subject to change by county referendum or pursuant to local government provisions (Ill. Const. 1970, art. VII, secs. 4(c), (7)) which would make the office subject to change by referendum? Second, should a change of venue have been granted because several members of the electoral board had a history of political conflicts with the supervisor? Finally, did the board's method of authenticating signatures constitute reversible error?

The supervisor's primary contention on appeal is that her office was created by the General Assembly pursuant to the revenue provisions of the Illinois Constitution of 1970 and, therefore, the office may not be made elective by referendum. (Ill. Const. 1970, art. IX, secs. 4(a), (7).) Cook offers four arguments in furtherance of this position. First, she asserts that express language in the Illinois Constitution shows her position is part of a statewide system designed for the uniform assessment of real estate and is not merely a county office subject to change by referendum under the Illinois Constitution of 1970, article VII, section 4(c). Second, she argues that the legislature as well as the delegates to the 1970 Illinois constitutional convention intended the supervisor of assessments to be part of a statewide uniform assessment plan. Third, Cook reasons that her position is analogous to the officers of clerk of the circuit court and State's Attorney, which are not seen as county offices. Finally, the supervisor contends that the legislature has the exclusive power to provide for the creation of the office and method of selecting the supervisor of assessments.

The supervisor relies on two provisions of the Illinois Constitution

of 1970 in contending that the office of supervisor of assessments is part of a statewide revenue system and not merely a county office. First, she cites article IX, which provides that "*** taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, sec. 4(a).) The supervisor reasons that this provision illustrates a plan of uniform assessment of real estate, with her office designed by the General Assembly in furtherance of this plan. (Ill. Rev. Stat. 1981, ch. 120, par. 484a.) In addition, she relies on article IX, which provides, "The General Assembly may provide by law for fair apportionment of the burden of taxation of property situated in taxing districts that lie in more than one county." (Ill. Const. 1970, art. IX, sec. 7.) She contends that the allowance of paragraph seven for multicounty taxing districts also provides evidence of a statewide plan for gathering revenue. See also Ill. Rev. Stat. 1981, ch. 120, pars. 484a, 484a.1.

■ However, section 4(c) of article VII of the Illinois Constitution permits county voters to change the manner of selecting any county officer, as follows:

> "Each county shall elect a sheriff, county clerk and treasurer, and may elect or appoint a coroner, recorder, assessor, auditor and *such other officers as provided by law* or by county ordinance. *** Any office may be created or eliminated and the terms of office and manner of selection changed by county-wide referendum. Offices other than sheriff, county clerk and treasurer may be eliminated and the terms of office and manner of selection changed by law. Offices other than sheriff, county clerk, treasurer, coroner, recorder, assessor and auditor may be eliminated and the terms of office and manner of selection changed by county ordinance." (Emphasis added.) (Ill. Const. 1970, art. VII, par. 4(c).)

None of the language relied on by the supervisor establishes that this paragraph does not mean what it plainly states, *i.e.* that the manner of selection of most county officials may be changed by countywide referendum.

Ms. Pierce also rebuts the supervisor's assertion that legislators and drafters of the constitution intended the office to be part of a statewide scheme under the revenue article. Pierce correctly notes that the legislature need not label the authority it exercises and may act pursuant to two or more powers simultaneously. (See *National Drag Racing Enterprises, Inc. v. Kendall County* (1972), 54 Ill. 2d 83, 295 N.E.2d 712.) In any event, the provisions of article VII, section 4(c) are written as a limitation of legislative power and expressly al-

low county voters to change the manner of selection of county offices. Ill. Const. 1970, art. VII, sec. 4(c).

The third aspect of the supervisor's constitutional argument is that her position is analogous to the offices of clerk of the circuit court and State's Attorney, which are not considered county officials (*Johnson v. State Electoral Board* (1972), 53 Ill. 2d 256, 290 N.E.2d 886; *People v. Thompson* (1980), 88 Ill. App. 3d 375, 410 N.E.2d 600). We find the supervisor's analogies to these offices to be inapposite. Although we have already stressed the need for the supervisor of assessments to remain free from interference by county officials (*Heller v. County Board* (1979), 71 Ill. App. 3d 31, 388 N.E.2d 881), the importance of a judicial system free from local interest is far more compelling than any interest present in the case at bar.

Finally, the supervisor asserts that only the legislature may provide for the creation of the office and method of selecting the supervisor of assessments. She relies on article IX, section 1, of the Illinois Constitution of 1970, which provides that the General Assembly has the exclusive power to raise revenue except as limited or provided by other provisions of the constitution. (Ill. Const. 1970, art. IX, sec. 1.) We note, however, that the legislature designed the office of supervisor of assessments in the manner it found fit. (Ill. Rev. Stat. 1981, ch. 120, par. 484a.) Moreover, the language of section 4(c) of article VII, allowing local voters to alter the manner of selection of county offices, is a clear limitation on the office, as provided for by the terms of article IX, section 1, itself. Ill. Const. 1970, art. VII, sec. 4(c), art. IX, sec. 1.

In short, the supervisor's constitutional argument is unpersuasive. She cites no authority or reason which convinces us that paragraph 4(c) of article VII does not allow for the manner of selection of "other offices," including the supervisor of assessments, to be changed by countywide referendum. Ill. Const. 1970, art. VII, sec. 4(c).

■ Next, we turn to the supervisor's argument that it was reversible error for the Shelby County electoral board to deny her motion for a change of venue. The three members of the board were Circuit Judge Vernon L. Plummer II, county clerk Dwight Campbell and State's Attorney R. Glen Wright. The supervisor's venue change motion alleged that each of the three were biased against her. The board held a hearing on the motion on September 1, 1982, and each of the three members decided he was not biased against the supervisor. In the trial court, the supervisor's petition reiterated her specific allegations. She asserted that Dwight Campbell was prejudiced against her because his wife was one of the signers of the petition and he was a

political adversary of hers, supported by the Shelby County Real Property Taxpayers' Association. The supervisor argued that Circuit Judge Vernon L. Plummer II was prejudiced against her because his brother-in-law and sister-in-law had signed the petition, because her counsel defeated Judge Plummer in the 1976 State's Attorney's race and because Judge Plummer and his wife had represented many members of the Shelby County Real Property Taxpayers' Association in related litigation. Finally, she asserted that State's Attorney R. Glen Wright was prejudiced against her because he opposed and defeated her attorney in the 1980 State's Attorney's election, with the support of the members of the taxpayers' group.

The trial court rejected the supervisor's venue challenge in its order of April 12, 1983, for two reasons. First, the trial court pointed out that the statute creating the board and designating its composition (Ill. Rev. Stat. 1981, ch. 46, par. 10—9(3)) does not provide any procedure for obtaining a change of venue. Second, the trial court stated that it had considered the nature of the challenges to each member and found the board's decision to be correct. We agree with the trial court's decision.

The statute provides for the substitution of electoral board members when a board member is a candidate for an office and nomination papers for that office are the subject of the board's action. (Ill. Rev. Stat. 1981, ch. 46, par. 10—9(7).) In addition, the Election Code allows for a candidate or objector aggrieved by the decision of an electoral board to secure judicial review in the circuit court of the county in which the hearing of the electoral board was held. (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1.) Given these protections, we hold that the objector did not have any implied right to a change of venue or substitution of judges. Moreover, the allegations of partisanship raised by the supervisor in her petition in the trial court are not sufficient to show reversible error. She directs our attention to no authority which requires an electoral board member to be disqualified from hearing a dispute because of past legal or political activity or conflicts. We decline her request to construe the Election Code to provide for different board members whenever an objector feels a conflict is present. It is not the province of the courts to inject provisions not found in a statute. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73.

■ ■ Finally, we consider the supervisor's argument that the board's method of authenticating signatures constituted reversible error. The board took a random sample of the signatures on the petition. Every third signature was examined, beginning by lot with the

second signature. The signatures were compared to each person's permanent registration card and 76 of the 1706 signatures were held invalid. Applying this ratio to the total number of the signatures, 228 signatures were rejected as invalid. A total of 1478 signatures were held valid, less than the 1497 signatures required by statute. The board then allowed petitioners to submit evidence from outside the permanent registration record cards to validate 17 of the invalid signatures. The supervisor contends that the recomputation of the number of valid signatures after hearing additional evidence was reversible error.

The outside evidence introduced to authenticate the signatures included affidavits and also precinct records from preceding elections. The supervisor objects to this evidence on appeal for several reasons. She contends that (1) these record were not the best evidence of the matters asserted, (2) many of the affidavits were notarized by a notary who signed the petition, (3) the records constituted hearsay, (4) the records denied her the right to cross-examine witnesses and (5) the record on appeal is incomplete because it does not contain copies of voter registration cards for those signatures to which objection was made but overruled.

We are not persuaded by the supervisor's evidentiary objections. The rules of the Shelby County electoral board provide that the board "*** will generally follow rules of practice which prevail in the Circuit Court of Shelby County, Illinois, but because of the nature of these proceedings, the Board will not be bound by such rules in all particulars." This rule means that board proceedings are not to be governed by the strict rules of evidence followed in the courtroom. Instead, the focus of such proceedings is on ascertaining whether the signatures on the petitions are in fact genuine. It has been held that election petitions will not be invalidated where substantial compliance with provisions of the Election Code is shown (*Madden v. Schumann* (1982), 105 Ill. App. 3d 900, 435 N.E.2d 173; *Stevenson v. County Officers Electoral Board* (1978), 58 Ill. App. 3d 24, 373 N.E.2d 1043), and certainly this principle applies to the supervisor's objections. They in no way cast doubt on the authenticity of the signatures, and only suggest variations from procedures which the board is not bound to follow. Moreover, it is well settled that it is the burden of the appellant to furnish this court with a complete record which sufficiently allows us to decide the issues presented. (*Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 408 N.E.2d 970.) The supervisor may not find fault with a record it was her responsibility to have prepared and filed. We therefore agree with the trial court's decision that the elec-

toral board did not err in its manner of authenticating the signatures on the petition.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.