RICHARD RYAN, Plaintiff-Appellant, v. STEVE LANDEK *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 87—0609, 87—0610 cons.

Opinion filed June 8, 1987.

Foss, Schuman, Drake & Barnard, of Chicago, and Robert F. Peck & Associates, of LaGrange (Sheldon Gardner, George C. Pontikes, and Robert F. Peck, of counsel), for appellant.

Louis F. Cainkar, Ltd., of Chicago (Vincent Cainkar and Michael G. Cainkar, of counsel), for appellees Steve Landek, Chester G. Haraf, and Samuel J. Ruffolo.

Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson, of counsel), for other appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

The newly formed Bridgeview Party (the party) circulated petitions to nominate John A. Oremus, Anne Cusack, Raymond P. Lederman, John T. Curry, John L. Pentz, and Michael J. Pticek for political offices in the village of Bridgeview. Included in the party's nomination papers was a certificate naming the officers of its party. The certificate listed Steve Landek as secretary and Chester Haraf as treasurer of the party.

Richard Ryan (Ryan), the plaintiff, filed an objector's petition to the party's nomination papers alleging defective wording on the petitions and that the party improperly appropriated the corporate name

of the village of Bridgeview. The Bridgeview electoral board (the board) held a hearing on Ryan's petition on February 8, 1987. The board was composed of Samuel J. Ruffolo, Steve Landek, and Chester Haraf. Landek and Haraf were officers of the party at the time of the hearing and had circulated the party's petitions.

Ryan moved for recusal of Landek and Haraf at the outset of the hearing because of their potential bias and interest in the proceedings. The board overruled Ryan's motion and rejected his objections, ordering that the name of the party and its candidates appear on the ballot. The circuit court affirmed the board's decision on appeal. This appeal raises the same issues that were before the circuit court.

I

■■ ■ We first address Ryan's contention that the board refused to afford him a fair, impartial and unbiased hearing. It is a well-settled principle of law that due process guarantees a party appearing before an administrative tribunal be judged by an unbiased decision maker. (*Withrow v. Larkin* (1975), 421 U.S. 35, 46-47, 43 L. Ed. 2d 712, 723, 95 S. Ct. 1456, 1464.) A hearing wherein the adjudicator has a substantial pecuniary interest in the proceedings has been held to be fundamentally unfair and violative of due process. (*Ward v. Village of Monroeville* (1972), 409 U.S. 57, 61-62, 34 L. Ed. 2d 267, 271-72, 93 S. Ct. 80, 84.) Illinois judges, for example, are required to recuse themselves when they or a member of their family have a financial stake in the case. (87 Ill. 2d R. 66.) Further, judges are required to recuse themselves when a close relative is a party or attorney in the case, or when the judge has previously acted as counsel in the case. (87 Ill. 2d R. 67.) Similarly, a blood relationship between a party and an administrative hearing officer has been held to compel disqualification. *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 484, 288 N.E.2d 49, 53.

Not all allegations of bias, however, rise to the level of a due process violation. For example, the court in *In re Objection of Cook* (1984), 122 Ill. App. 3d 1068, 1072, 462 N.E.2d 557, 560, held that the allegations of political bias levied against electoral board members were insufficient to compel a substitution of board members or a change of venue. In *Cook*, the objector claimed a substitution of board members or a change of venue was necessary because she could not receive a fair hearing before a board that consisted entirely of her and her attorney's former political adversaries. In rejecting the objector's claims, the court reasoned that the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 1—1 *et seq.*) only provides for substitution of elec-

toral board members when a board member is a candidate for an office and nomination papers for that office are the subject of the board's action. (Ill. Rev. Stat. 1985, ch. 46, par. 10—9(6).) It further reasoned that if an objector or candidate is still aggrieved with the decision of the board, he or she can secure judicial review in the circuit court of the county where the hearing was held. (Ill. Rev. Stat. 1985, ch. 46, par. 10—10.1.) The court concluded that these statutory protections precluded finding an implied right to substitute board members or change venue, "whenever an objector feels a conflict is present." *In re Objection of Cook* (1984), 122 Ill. App. 3d 1068, 1072, 462 N.E.2d 557, 560.

■ *Cook* is analogous to the instant case. Similar to *Cook*, Ryan alleges he cannot receive a fair hearing because of political bias. Even if we assume these allegations to be true, we agree with *Cook* that the Election Code does not provide for substitution when an objector alleges political bias. The legislature has set up a stable mechanism for addressing preelection grievances. The statutory provisions allowing substitution under particular circumstances and judicial review adequately insure an objector a fair hearing. It is not the province of courts to inject provisions not found in a statute (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73, 79) and upset the preelection process.

## II

■ ■ We next address Ryan's argument that the affidavits of the party's circulators do not conform to the requirements of section 10—4 of the Election Code. (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.) Ryan alleges the affidavits are defective because they state:

> "I *** do hereby certify that I am a registered voter of the political division for which the candidate is seeking *election* ***."

(Emphasis added.)

Instead of the language in section 10—4, which states in relevant part as follows:

> "At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political division for which the candidate or candidates *shall be nominated* ***."

(Emphasis added.) Ill. Rev. Stat. 1985, ch. 46, par. 10—4.

Of course, to decide whether the language of the petition violates section 10—4, we must look to the statute. It is axiomatic that the language of a statute should be given its plain and ordinary meaning. (*Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396, 475 N.E.2d 536, 539.) Such plain

and ordinary meaning is considered to best determine the intent of the legislature with respect to construction of the statute. (*McGuire v. Nogaj* (1986), 146 Ill. App. 3d 280, 283, 496 N.E.2d 1037, 1039.) This court must interpret the law so as to give it the effect announced by the legislature. *Hill v. Catholic Charities* (1983), 118 Ill. App. 3d 488, 492, 455 N.E.2d 183, 186.

Ryan claims that the alleged defect in the affidavits requires the names of the candidates and the names of the party be stricken from the ballot. To support his position Ryan primarily relies on *Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 99, and *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292. In both *Schumann* and *Havens* the court struck the names of the candidates because the circulator's affidavits failed to follow the language of section 10—4. In *Schumann*, the affidavits failed to state that the voters who signed the petition were both registered and qualified. In *Havens*, the affidavits failed to state that the voters were registered.

■ These cases are distinguishable from the instant case. The defects in the affidavits in *Schumann* and *Havens* relate to expressions that the circulator must swear to in his affidavit. It is a mandatory requirement under section 10—4 that the circulator certify that the voters signing the petitions are registered and qualified. However, a plain reading of section 10—4 indicates it is not a requirement, mandatory or otherwise, that the petition contain the exact words "shall be nominated." These words merely describe the "political division" in question. An affidavit need only contain sufficient detail to identify which political division is involved.

■ In the instant case, the party described "political division" with the phrase "for which the candidate is seeking election." This language adequately describes the political division involved in this case. Thus, the affidavits were sufficient and did not violate the terms of section 10—4.

### III

■ Ryan next argues that use of the name "Bridgeview" within the name of the party is a violation of section 10—5 of the Election Code. (Ill. Rev. Stat. 1985, ch. 46, par. 10—5.) This section provides in relevant part:

> "All petitions for nomination shall, besides containing the names of candidates, specify as to each:
>
> * * *
>
> 2. The new political party, if any, represented, expressed in not more than 5 words. However, such party shall not bear the

same name as, nor include the name of any established political party ***." Ill. Rev. Stat. 1985, ch. 46, par. 10—5.

Ryan does not present any facts, nor does he argue that "Bridgeview" is the name of an established political party. Instead, he correctly points out that "Bridgeview" is the corporate name of the village of Bridgeview. Since it is not the name of an established political party, use of the name Bridgeview Party does not violate section 10—5.

■ Alternatively he argues that use of the name "Bridgeview" in the party name would mislead voters into thinking the village has endorsed the new party. It is a very common practice to use the name of a municipality in the name of a new party. The use of the name Bridgeview should not cause any confusion or mistaken impressions in the minds of voters.

## IV

■ Lastly, Ryan argues that the name John A. Oremus, the party's candidate for village president, should be stricken from the ballot. According to Ryan, Oremus' nomination papers do not contain his correct residence address, in violation of section 10—4 of the Election Code. (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.) This provision provides in relevant part as follows:

> "Such petitions [for nomination] shall consist of sheets of uniform size and each sheet shall contain, above the space for signature *** [the candidate's] place of residence ***." (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.)

Clearly, the salutary purpose of this provision is to prevent a candidate from fraudulently running in an election when he does not reside in the political division involved in the election.

In the instant case, the candidate resides within the political division involved in the election. He provided his residence address as required by section 10—4, but the last digit was mistyped. At the board's hearing on Ryan's objections, a sworn affidavit was presented which showed that the wrong address appeared as a result of a typographical error.

Ryan has not presented, nor have we found, a case where a candidate's name was stricken from the ballot because of a minor typographical error. This case is not like *Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 458-59, 430 N.E.2d 99, 102, or *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 569, 429 N.E.2d 1292, 1299, where the petitions were held to violate section 10—4, because the circulators did not include any address. Here, the candidate included his address

except the last digit was mistyped.

Ryan insists that any deviation from the requirements of section 10—4, no matter how minor, requires removal from the ballot. Following this argument to its logical conclusion, a candidate's name could be removed from the ballot if all his nomination papers were not exactly uniform. If a secretary used one off-white piece of paper, or one that was a fraction of an inch shorter or longer than the rest, this would mandate removal from the ballot. Ryan's argument clearly elevates form over substance and does not further the legislature's purpose in promulgating section 10—4. Certainly, the legislature did not intend to deny voters and candidates important substantive rights on such an absurd basis. Thus, we hold that one mistyped digit in a candidate's nomination papers is not sufficient to have his name removed from the ballot.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.