THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE A. SAGSTETTER, Defendant-Appellant.

Second District   No. 2—87—0363

Opinion filed December 29, 1988.

G. Joseph Weller, Michael F. Braun, and Kathleen J. Hamill, all of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Georgette Nabhani, of Chicago, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Wayne A. Sagstetter, was charged in a two-count information, in which count I alleged he committed a criminal sexual assault on his 14-year-old stepdaughter, and count II alleged that he committed aggravated criminal sexual abuse against his stepdaughter.

Defendant agreed to enter a plea of guilty to the aggravated criminal sexual abuse charge. In return, the prosecutor agreed to dismiss the criminal sexual assault charge and to recommend a sentence of 30 months' probation. Under the plea bargain agreement, defendant was to serve 120 days in jail, receive counseling, and not have contact with his stepdaughters.

The prosecutor's factual basis was that defendant entered his stepdaughter's bedroom on September 12, 1986, and placed his hands "on her breast area and between her legs." Defendant also admitted to the police that he placed his tongue inside his stepdaughter's vagina. After admonishing defendant and hearing the factual basis, the court accepted the guilty plea and entered a judgment of guilty. The court ordered a presentence report.

The presentence investigation was summarized as follows:

"The defendant took sexual advantage on a young girl. The defendant was in the home as a step-parent. He took advantage of his position within the family for his personal sexual gratification. This is most unfortunate, as the crime [a]ffects more than just the defendant.

*** The defendant himself, appeared to be remorseful for his actions. He may now begin to realize the immense adverse effects his actions had on this family. Mr. Sagstetter needs to continue with counseling and at this time appears to be willing to do so."

Two documents were attached to this report. First was a letter from Dave Manson, master clinician of the Jane Adams Mental Health Community Center (Jane Adams). In the course of outpatient treatment for defendant, he had interviewed the defendant on six occasions. Manson wrote as follows:

"Mr. Sagstetter is an inadequate and inept individual who func-

tions on a very infantile level. He has had a poor vocational history and marital relationship. He lacks empathy for others and manipulates others to meet his needs. He is incapable of healthy adult/adult relationships. He does not differentiate between healthy and dysfunctional ways of meeting his needs. He exhibits delusion that distort the thoughts, feelings and intent of others. He shows minimal comprehension and understanding of his own personality and motivations. While admitting to having sex with his daughter against her will on many occasions, he does not take ownership for that behavior or show remorse for it.

Enclosed are some of Mr. Sagstetter's thoughts and feelings that he wrote down and gave to me. As you read what he wrote, please note the erotic, if not pornographic, nature of his experience. These thoughts and feelings are directed toward a child. He admits to lacking control of his sexual thoughts and feelings toward children and experiences anxiety about abusing children again. His prognosis is very poor."

The second document was a seven-page statement or narrative written by defendant on or about November 1, 1986. This document, written in a rambling fashion, was apparently written in response to Manson's suggestion that defendant look into his thoughts and actions and write about them. In this statement the defendant, in the most graphic detail, described a sexual experience with his minor stepdaughter, which included repeated acts of sexual intercourse. Both at the beginning and conclusion of the statement, defendant wrote he was not sure any of it actually happened.

At the commencement of defendant's sentencing hearing, the court stated that it had received the presentence report, which included the aforementioned documents, and asked if there were any additions or corrections. Defendant stated that there was additional material from Jane Adams to be submitted. Said materials were apparently not brought before the court at this time. Defendant did not object to the inclusion of either Manson's letter or of his November 1, 1986, statement. The hearing was continued.

On December 12, 1986, the sentencing hearing was again continued at defendant's request until January 28, 1987. Again, no objection was put forth by the defendant to the admission of the Manson letter or November 1, 1986, statement.

On January 28, 1987, the sentencing hearing took place. Defendant had subpoenaed Dave Manson from Jane Adams to appear at the sentencing hearing on January 28, 1987. The subpoena further re-

quired Manson to bring an additional statement written by defendant on November 3, 1986. Manson identified the second statement written by defendant and further testified that in this statement, defendant wrote that he did not believe he ever had sexual intercourse with the victim. The November 3, 1986, statement was then offered and accepted into evidence. In it the defendant again expressed, in very graphic detail, his sexual desire for his stepdaughter, Stacey, but further indicated he did not think he previously had intercourse with her. In this statement, defendant expressed his desire to reestablish a normal relationship with his stepdaughters, including supervised visitation with them.

Defendant testified on his own behalf. He explained his first statement to Manson. He stated that it was written while he was in the Stephenson County jail "coming off the wall." Defendant further testified that prior to this time, he had been institutionalized in the Singer Zone Center, and when he wrote the first letter, he had been unable to separate "fantasy from reality."

In response to the court's questions, defendant explained that the contents of the first statement to Manson were fantasy and that he was "following Mr. Manson's advice and writing out in detail what was coming in my mind to help me through the depression." The court then asked defendant about his second statement to Manson which seemed to indicate that there may have been some "incidents" involving another stepdaughter. Defendant explained that these incidents meant "rough-housing, accidental touching of the breast."

In reviewing the statements defendant wrote for Manson, the court concluded that, in labeling parts of the statement "fantasy" and parts "reality," defendant was, as Manson had described, manipulating others to meet his needs. The court twice termed the statements as "very upsetting." Agreeing with defendant that he had a "psychological problem," the court again stated that the statements involved manipulation and were "self-serving," which led the court to believe that "maybe you're not entirely a good prospect for probation." The court added, "My belief from what I have heard you say and what is in the reports that there is more of an element of truth in your letters as to what took place then [than] you're willing to admit here on the stand and I have to make those judgments based on what is believable." The court sentenced defendant to four years in prison.

The court then appointed new counsel to assist him in the preparation of a motion to withdraw his guilty plea. The motion to withdraw the guilty plea alleged that the sentence was not in compliance with the requirements of the Unified Code of Corrections (Ill. Rev.

Stat. 1985, ch. 38, par. 1001—1—1 *et seq.*), that the court had erred in considering material elicited from defendant solely for the purpose of treatment, and that the court had made other erroneous decisions in reviewing the mitigating evidence that resulted in probation not being granted. In arguing the motion, defense counsel observed that "a significant part" of the court's sentencing decision seemed to stem from the court's reading of defendant's statements to Manson and the court's belief that there was a likelihood that defendant had engaged in some of the conduct described in the statements. Defense counsel admitted that the statements were "extremely disturbing," but contended that the sentence should not have been based on those statements, where there was no evidence that the conduct described therein had taken place. Defense counsel maintained that statements had been "therapeutic tools" in which defendant would "try to vent out, or at least straighten out his mind" with regard to his problems.

The court determined that defense counsel's motion and argument were directed to whether the sentence should be vacated and not whether the plea should be withdrawn. The court explained that references to the statements were made after the guilty plea was accepted. The court further stated that it was concerned about defendant's hope to be able to establish a "proper" stepfather and stepdaughter relationship with the victim when she was an adult. The court believed this would make it likely that this offense would reoccur. The court denied the motion, stating, "primarily because I feel that it does not raise issue [sic] which would entitle the defendant to withdraw a plea of guilty."

On appeal, defendant raises three issues: (1) the statements written by him to his therapist should not have been considered by the court without his express waiver; (2) said statements should not have been considered by the court at sentencing; and (3) the court abused its discretion in imposing a sentence of four years' imprisonment. Because of our determination of the first issue, we do not need to address the other arguments raised by the defendant.

Defendant points out that he, at the suggestion of Dave Manson, his counselor at Jane Adams, wrote long statements or narratives describing a fantasized sexual relationship with his 14-year-old stepdaughter. Defendant contends that these statements were privileged communications made in connection with the receipt of mental health services and, as such, should not have been considered at the sentencing hearing.

Defendant asserts that there is no indication that the statutory requirements for a waiver were followed in regard to those statements.

He maintains that there is no showing that written consent was given or that a written consent form specifying the nature of the information to be disclosed was given to him. Moreover, he argues that the letters were intended to be confidential and that they were drafted as a part of a treatment program. Defendant notes that at the sentencing hearing, he stated that he was "following Mr. Manson's advice and writing out in detail what was coming in mind to help me get through the depression."

Further, defendant maintains that, while under some circumstances defense counsel's introduction of his second statement to Manson might constitute an express waiver of the therapist-client privilege, here, it is clear that defense counsel sought to introduce the second statement because the privilege had already been violated by disclosure of the first statement and that counsel was simply trying to help put the first statement's contents into proper context.

The defendant further argues that defense counsel's motion to withdraw the guilty plea drew the court's attention to the improper admission of defendant's first statement by alleging that it was error to admit it into evidence and to consider materials which had been elicited from defendant solely for the purpose of treatment. Defendant points out that, despite being alerted to this problem, the court continued to rely on said statements.

Next, defendant urges that, if this court finds that his contentions in the motion to withdraw the guilty plea were inadequate to preserve this issue for review, then defense counsel's failure to take the necessary steps to assert the therapist-client privilege should be deemed ineffective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Defendant asserts that under *Strickland*'s two-pronged test, defense counsel failed to perform as a reasonably competent attorney in failing to recognize and assert the statutory privilege covering the relationship of defendant and his therapist and that, because of the court's continuing reliance on said statements, there is reasonable probability that, but for this unprofessional error, the result of the sentencing hearing would have been different.

The State argues that the statements were no longer privileged communications at the sentencing hearing because defendant placed his own mental condition as an issue before the court. (Ill. Rev. Stat. 1985, ch. 91½, par. 810(a)(1).) The State contends that this came about in the plea bargaining agreement between defendant and the State, wherein he agreed to undergo counseling for his mental problems, thereby putting his mental condition before the court. There-

fore, the State maintains that the trial court was duty bound to review and assess all information before it determined the true extent of defendant's mental problems and any danger to others associated with it.

■ Further, the State argues that the disputed statements are admissible through one of the exceptions to the general prohibition against revealing mental health clients' records and communications found in the Mental Health and Developmental Disabilities Confidentiality Act (Act) (Ill. Rev. Stat. 1985, ch. 91½, par. 809(4)). Section 9 provides in pertinent part:

"In the course of providing services, a therapist may disclose a record or communications without consent to:

\* \* \*

(4) any department, agency, institution or facility which has custody of the recipient pursuant to State statute or any court order of commitment."

In contending that section 9(4) applies to this case, the State points out the defendant's counselor, Dave Manson, is a therapist pursuant to section 9 and that the statements are records or communications defined by the Act. The State then maintains that the trial court, which had jurisdiction over defendant's person, clearly was a department, agency, institution, or facility under section 9(4).

■ After reviewing the record, we agree with defendant's contention that the two statements were therapeutic tools, aimed at helping defendant to address his considerable mental problems. Defendant wrote both narratives in response to therapist Manson's suggestion that he put down his thoughts. They were written as confidential elements of a treatment program and were not to be considered at sentencing, without defendant's express approval.

We find no evidence that Manson allowed defendant any opportunity to refuse the disclosure of his narratives. (Ill. Rev. Stat. 1985, ch. 91½, par. 810(a).) It is evident that Manson turned over the disputed narratives to the prosecutor in direct contravention of the statute. The statements should only have been put before the trial court with defendant's permission, which Manson never sought.

■ Moreover, the State's argument that, because defendant's mental condition was made an issue at the sentencing hearing, the disputed narratives could be disclosed for purposes of said hearing is not correct. The relevant statutory language reads as follows:

"(1) Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services re-

ceived for such condition as an element of his *claim or defense.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 91½, par. 810(a)(1).

Defendant did not make his mental condition an element of his claim or defense. He pleaded guilty to the charge of aggravated criminal sexual abuse and, thus, had no defense. The fact that he was receiving help for his mental problems in no way indicates that he was making his mental condition a defense to the charges against him.

■■ Further, we find that these statements to be uncorroborated and unduly prejudicial and inflammatory. (Ill. Rev. Stat. 1985, ch. 91½, par. 810(a)(1).) There is no question that the contents of both statements are offensive. In its brief, the State admitted the statements expressed "sick, perverted thoughts." The sentencing court was clearly appalled by the statements' contents and twice labelled them as "very upsetting." Added to the offensive nature of the statements is the uncertainty as to whether they depict situations that actually occurred or are defendant's fantasies put to paper. The probative value of such statements at a sentencing hearing was thoroughly outweighed by their inflammatory nature and their questionable veracity.

■■ Finally, the State's argument that section 9(4) contemplates nonconsensual disclosures by therapists to the criminal justice system is not correct. There is nothing in the language of subparagraph 4 to indicate that any element of the criminal justice system was to be included in the department, agencies, institutions, or facilities to which a therapist may disclose confidential materials without consent. Specifically, the phrase "which has the custody of the recipient pursuant to State statute or any *order of commitment,*" uses the language of the mental health system, not that of the criminal justice system. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 91½, par. 809(4).) If the legislature had meant to create statutory language which so clearly compromised the rights of mental health services recipients to confidentiality, as the State suggests, then it would have *directly* referred to the criminal justice system in section 9(4) as being an entity to which a therapist could turn over nonconsensual materials. It is not the province of courts to inject provisions not found in statutes. *In re Objection of Linda Lou Cook to Referendum Petition of Marjorie Pierce* (1984), 122 Ill. App. 3d 1068.

■■ Next, we find that this issue was not preserved for appeal due to defense counsel's failure to make timely objections to the introduction of the first statement. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33.) Nevertheless, we find that in failing

to take the necessary step to assert the therapist-recipient privilege, defense counsel provided ineffective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) By failing to protect defendant's privilege not to have the statement disclosed without his permission, defense counsel clearly failed to perform as a reasonably competent attorney.

A quick perusal of the relevant statute would have demonstrated to defense counsel that the statements were privileged and should not have come before the court. But for defense counsel's unprofessional errors, the result of the sentencing hearing would likely have been different. As held above, the statements' inclusion in this proceeding unduly prejudiced defendant.

Accordingly, the sentence of the circuit court is vacated, and this case is remanded for a new sentencing hearing before a different judge.

Reversed and remanded.

DUNN and McLAREN, JJ., concur.